**RONEY AND COMPANY,**
**Petitioner–Appellant,**

v.

**Sam KASSAB; Akram Semaan,**
**Respondents–Appellees.**

**No. 91–2223.**

United States Court of Appeals,
Sixth Circuit.

Argued and Submitted Oct. 2, 1992.

Decided Dec. 14, 1992.

Raymond W. Henney (argued and briefed), Honigman, Miller, Schwartz & Cohn, Detroit, MI, for petitioner-appellant.

Jerald R. Lovell (briefed), Mount Clemens, MI, David K. Easlick, Jr., Grosse Pointe Farms, MI, for respondents-appellees.

Before: KEITH, JONES and BOGGS, Circuit Judges.

KEITH, Circuit Judge.

Appellant, Roney & Company, ("Roney" or the "Company"), appeals the district court's determination that the applicability of Rule 603 [1] of the New York Stock Exchange ("NYSE") to the instant action should be decided by an arbitrator. Under Rule 603, an aggrieved party must commence arbitration proceedings within a six-year period from the disputed transaction. Roney commenced this action to enforce the arbitration provision of the customer agreement entered into by Sam Kassab and Akram Semaan (collectively "Appellees"), which provides that all disputes must be submitted to arbitration conducted under

---

**1.** Rule 603 of the New York Stock Exchange states:

No dispute, claim or controversy shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

the provisions of the Constitution and Rules of the NYSE.[2] For the reasons stated below, we VACATE the district court's ruling and REMAND the case for further proceedings consistent with this opinion.

## I.

When the relationship began, David T. Marantette, III ("Marantette") acted as Appellees' account representative. In August of 1978, the Appellees opened a joint investment account with Roney and apparently maintained that account until Marantette voluntarily terminated his association with Roney on November 30, 1984.

In February of 1991, Appellees commenced an arbitration proceeding before the National Association of Securities Dealers, Inc. ("NASD"), asserting claims against Roney and Marantette under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and the Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. § 1961 et seq. Appellees allege that, during a period between 1980 and 1982, Marantette wrongfully purchased 22,000 shares of Metropolitan Savings stock, which resulted in a substantial loss for Appellees. The Appellees acknowledge that they were aware of the monetary loss shortly after the transaction. Appellees also allege that Marantette wrongfully purchased Bayly Corp. stock in 1985 utilizing their Roney account. Appellees claim that these two transactions were improper and that Roney's failure to inform them of Marantette's departure from the Company in 1984 and of his alleged improper conduct amounted to fraudulent concealment and a violation of RICO.

On June 25, 1991, Roney commenced this action seeking to enjoin Appellees from pursuing their claims before the NASD. Roney first argued that, under Rule 603 of the NYSE, Appellees' claim cannot be heard because it was not commenced within six years of the "occurrence or event giving rise to the act or dispute, claim or controversy." Appellees commenced this action in 1991, more than six years following Marantette's departure from Roney in 1984. Roney asserted that Marantette's departure severed the Company from any wrongful conduct on Marantette's part. Roney also argued that Appellees may not properly maintain their claims before the NASD because the parties' customer agreement provided that claims may only be raised before and under the rules of the NYSE.[3] Accordingly, Roney maintained that Appellees' claims must be dismissed.

In response, Appellees made various legal arguments regarding the interpretation of the customer agreement's arbitration provision and the application of NYSE Rule 603. Appellees, however, did not challenge the validity of the customer agreement or its arbitration provision. They also did not contest the fact that Marantette left Roney in 1984. They further acknowledged that they failed to commence any proceeding for redress within six years of Marantette's departure from Roney in 1984.

On September 24, 1991, the district court heard Roney's motion to enjoin the NASD proceedings. Following the presentation of arguments, the district court stated from the bench:

> There's no question in this Court's mind that the August 1st, 1978 customer agreement provides that any, any contro-

---

**2.** The arbitration provision provides in full:

It is agreed that any controversy between us arising out of your [Roney & Co.'s] business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, except however if the controversy involves any security or commodity transaction or contract relating thereto executed on an exchange located outside of the United States then such controversy, at the election of either of us, shall be submitted to arbitration conducted under the constitution and rules of such exchange (and if neither of us so

elects, arbitration shall be conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange). Arbitration must be commenced within one year after the cause of action accrued by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate, naming therein the arbitration tribunal.

**3.** Roney also notes that Section 15 of the NASD Code of Arbitration contains the same six-year eligibility requirement.

versy or dispute is to be submitted and conducted under provisions of the Constitution Rules of the Board of Governors of the New York Stock Exchange. Therefore, this Court feels that provision is enforceable.

Roney versus Goren, the Sixth Circuit case mentioned by [Roney's counsel], is applicable. And this Court feels that the petitioner is entitled to injunctive relief, in the sense that this Court will, will order that the matter be arbitrated by the New York Stock Exchange.

With respect to the matter of the statute of limitations, I agree with the respondent's [Appellees'] position there. I think that's a matter that should be taken up by the arbitrator and not by this Court with respect to the RICO or any other claims.

On September 25, 1991, the district court entered the following order:

For the reasons stated on the record following the September 24, 1991, hearing the Court ENJOINS Defendants from arbitrating its claims against Roney and Company before the National Association of Securities Dealers, Inc. ("NASD"). Thus, in enforcing the arbitration provision contained in the August 1, 1978 Customer Agreement, the Court concludes that Defendants [sic] forum is limited to arbitration before the New York Stock Exchange ("NYSE").

Regarding the applicability of Rule 603, the Court leaves this issue to the arbitrator. Accordingly the Complaint is DISMISSED.

From the second paragraph of this order, this timely appeal followed.

## II.

■ Roney challenges on appeal the district court's failure "to rule that Appellees' claims against Appellant were not eligible for arbitration pursuant to the six (6) year eligibility period of the Rules of the New York Stock Exchange which is incorporated in the parties' arbitration agreement." This Circuit now adopts the position taken by our sister circuit which indicates that the district court should decide the Rule

603 arbitrability issue. *See PaineWebber, Inc. v. Hartmann,* 921 F.2d 507 (3d Cir. 1990). *See also, PaineWebber, Inc. v. Farnam,* 870 F.2d 1286, 1292 (7th Cir.1989) (reaching a similar conclusion with regard to Section 15 of the NASD Code of Arbitration Procedure). Accordingly, we VACATE the second paragraph of the district court order and REMAND the case to the district court for proceedings consistent with this opinion.

### A.

The Supreme Court noted in *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986):

[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.... This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.

*Id.* at 648–49, 106 S.Ct. at 1418 (citations omitted). Thus, the duty to arbitrate derives from the contractual agreement of the parties. *See Wiepking v. Prudential–Bache Securities, Inc.,* 940 F.2d 996, 998 (6th Cir.1991). This Circuit in *Wiepking* further observed:

[W]e have recognized that the FAA (Federal Arbitration Act) does not require parties to arbitrate when they have not agreed to do so, ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement.... It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.

*Id.* (quoting *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989)) (emphasis added).

"Whether or not a (party) ... is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by

the court, and a party cannot be forced to 'arbitrate the arbitrability issue' " *Litton Financial Printing Division v. NLRB,* — U.S. —, —, 111 S.Ct. 2215, 2226, 115 L.Ed.2d 177 (1991). The *AT & T Technologies* Court is also instructive, stating:

> [T]he question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agree to arbitration is to be decided by the court, not the arbitrator.

*AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418. Both *Litton Financial* and *AT & T Technologies* involved the arbitration of fair labor disputes. Nevertheless, the Third Circuit has applied, and we think appropriately, the reasoning of AT & T Technologies to arbitration provisions of customer agreements in the securities industry. *See PaineWebber, Inc. v. Hartmann,* 921 F.2d 507, 510–11 (3d Cir.1990).

*Hartmann* involved a petition by Paine-Webber to enjoin the Hartmanns from pursuing their arbitration proceeding before the NYSE based on the six-year limitations period of Rule 603. *Hartmann,* 921 F.2d at 509–10. The arbitration proceeding was based on a transaction that had occurred in their brokerage account more than six years before the Hartmanns filed the arbitration proceeding. The district court enjoined any further proceedings on the part of the Hartmanns in light of the limitations period. *Id.* The Hartmanns appealed the district court's decision arguing that the court erred by interpreting Rule 603 as a substantive rather than a procedural bar to the claim. *Id.* at 510. This determination, the Hartmanns argued is better left to the arbitrator. *Id.*

The Third Circuit recognized that the Hartmanns' reading of Rule 603, as simply a procedural bar, was plausible and had support in the case law. *Id.* at 512 (citing *County of Durham v. Richards & Associ-*

ates, Inc., 742 F.2d 811, 815 (4th Cir.1984); *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1027–28 (11th Cir. 1982); *O'Neel v. National Association of Securities Dealers, Inc.,* 667 F.2d 804, 807 (9th Cir.1982); *Conticommodity Services, Inc. v. Philipp & Lion,* 613 F.2d 1222, 1227 (2d Cir.1980)). If Rule 603 merely served as a procedural bar, the arbitrator would then decide the effect of a party's failure to comply with the requirements of Rule 603.

With that acknowledgment, the principal question faced by the *Hartmann* court was "which of the two proffered interpretations of the language and original intent of Rule 603 should prevail, keeping in mind that arbitration should be compelled unless it can be said with 'positive assurance' that the agreement to arbitrate does not cover the dispute." *Hartmann,* 921 F.2d at 512. The *Hartmann* court rejected the procedural/substantive characterization, declining "to allow the federal policy favoring arbitration, with its accompanying presumption of arbitrability, to override the will of the parties by giving the arbitration clause greater coverage than the parties intended.…" *Id.* at 513 (quoting *National Railroad Passenger Corp. v. Boston & Maine Corp.,* 850 F.2d 756, 760–61 (D.C.Cir.1988)). The fear was that the presumption of arbitrability would undermine a "compelling case for nonarbitrability". *Id.* at 513. The *Hartmann* court went on to provide three reasons why the claim was not arbitrable.

> First, the plain language of Rule 603 states that after six years from the events giving rise to the dispute have elapsed, the dispute "shall [not] be eligible for submission to arbitration." …

> Second, the only other appellate court to interpret, in a similar context, language identical to Rule 603—namely that found in § 15 of the Code of Arbitration Procedure of the National Association of Securities Dealers (NASD) [4]—reached the same conclusion.… In *Paine-*

---

**4.** NASD Code of Arbitration Procedure, Section 15 reads:

No dispute, claim or controversy shall be eligible for submission to arbitration under this

code where six years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy.

*Webber Inc. v. Farnam,* 870 F.2d 1286, 1292 (7th Cir.1989), the Seventh Circuit also reasoned that the word "eligible" must be given its plain and literal meaning and interpreted it as absolutely barring stale disputes from reaching arbitration. . . .

Third, the language of Rule 603 stands in stark contrast to that found in the cases cited by the Hartmanns.

*Id.* at 513 (footnote added).

Each reason espoused by the *Hartmann* court is equally applicable to the proceeding at bar. The language of Rule 603 has not been altered since the *Hartmann* court rendered its decision. Additionally, post–*AT & T Technologies,* our sister circuit determined that Rule 603 should and does act as a substantive bar in light of the qualifying phrase "eligible for submission to arbitration". *See Hartmann,* 921 F.2d at 512. *See also PaineWebber, Inc. v. Farnam,* 870 F.2d 1286, 1292 (7th Cir. 1989). Finally, Appellees in this instance have presented no compelling reason to deviate from the clear language of Rule 603.

Moreover, this Circuit, in *General Drivers, Warehousemen and Helpers, Local Union 89 v. Moog Louisville Warehouse,* 852 F.2d 871 (6th Cir.1988), also rejected the procedural/substantive bar distinction for an arbitration provision. In *Moog Louisville,* the parties entered into an arbitration agreement providing that claims were not arbitrable unless the union notified the company of its intention to arbitrate within 15 days of the company's denial of a grievance. The district court held that the issue of timeliness of the arbitration request was itself an issue to be decided by arbitration.

On appeal, this Court in *Moog Louisville* reversed the district court stating:

We have discussed briefly the authority cited by the district court and by the plaintiff to show that the key inquiry under *AT & T Technologies, supra,* and the earlier Supreme Court cases is what the contract, and particularly the arbitration section of the contract, may say about arbitrability. The fact that there is a general agreement, under certain circumstances, to afford arbitration as a last resort is not controlling. The court must first determine from the contract provisions dealing with arbitration, the particular grievances that are intended to be subject to arbitration. It will not do to characterize something as "procedural" and conclude automatically that "procedural" matters are for the arbitrator *if the parties have specified otherwise* in the arbitration itself. *AT & T Technologies* has put it best by stating plainly that whether a contract creates a duty to arbitrate a particular grievance is an issue for the courts to decide. 475 U.S. at 649, 106 S.Ct. at 1418. We believe that the contractual language in this case clearly indicates that the particular grievance in dispute is excluded from arbitration unless the court first finds that the union met the conditions precedent to arbitration.

*Moog Louisville,* 852 F.2d at 875 (emphasis in original).

In light of the principles espoused in the recent decisions of this Court, the Supreme Court and our sister circuits, the district court erred in referring the question of Rule 603 eligibility to the arbitrators. Accordingly, we VACATE the second paragraph of the district court order and REMAND the case to district court.

## B.

 The effect of Rule 603 on the facts of this case is a legal question upon which this court may rule. *See, e.g., PaineWebber, Inc. v. Hartmann,* 921 F.2d 507, 510–14 (3d Cir.1990). In light of the mandatory language of Rule 603, the district court should enjoin the Appellees from pursuing any further claims rooted in the transactions that they have listed in their complaint.

As discussed above, the Third Circuit in *Hartmann* and the Seventh Circuit in *Farnam* found that claims of misrepresentation and unsuitability were submitted to arbitration by customers beyond the six years allowed under the respective rules of the NYSE and the NASD. *See Hartmann,*

921 F.2d at 507; *Farnam,* 870 F.2d at 1286. Each court enjoined any further arbitration proceedings because the customers' claims were not "eligible" for arbitration within the clear language of the rule. *Hartmann,* 921 F.2d at 513–15 (affirming the injunction of claims before the NYSE); *Farnam,* 870 F.2d at 1292 (enjoining the claim before the NASD).

■ In the case at bar, Appellees have failed to bring their claims within six years of any alleged wrongdoing on the part of Marantette, who departed from Roney's employ in 1984. Absent some statutory exemption from the arbitration agreement, Appellees' claims must be enjoined.

Appellees contend that their claims are not subject to the Rule 603 eligibility requirement because they are based on Roney's alleged "fraudulent concealment" and violation of RICO provisions. Appellees contend that, because of Roney's failure to inform them of Marantette's departure and subsequent legal troubles, Roney engaged in wrongful conduct. Moreover, they contend that, if RICO violations are proven before the NYSE arbitrator, they are exempt from the six-year eligibility requirement of Rule 603.

■ Fraudulent concealment requires some affirmative fraudulent act and an additional act to perpetuate the concealment. *Davenport v. A.C. Davenport & Gas Co.,* 903 F.2d 1139, 1142 (7th Cir.1990). Mere inaction or silence is not sufficient. *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1416 (9th Cir.1987).

■ Based on the record, Appellees have not stated a sufficient claim for fraudulent concealment. Appellees would have this Court place an affirmative duty on Roney to advise them of any change in personnel who had responsibility for their investment account. Note, however, that the Appellees did not inquire as to the status of Marantette despite their continued dealings with him into 1985. Appellees only began to call into question their early 1980's losses after fortuitously discovering that Marantette had engaged in improper conduct. Appellees have presented no evidence to meet their burden of proving that Roney attempted to conceal any wrongdoing on the part of Marantette. Accordingly, the fraudulent concealment allegation can have no impact upon the application of Rule 603.

■ With regard to Appellees' RICO claims, the Supreme Court has indicated the RICO claims are subject to private arbitration agreements through the Federal Arbitration Act. *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 238, 107 S.Ct. 2332, 2343, 96 L.Ed.2d 185 (1987) ("there is nothing in the text of the RICO statute that even arguably evidences congressional intent to exclude civil RICO claims from the dictates of the [Federal] Arbitration Act."). Moreover, in *Agency Holding Corp. v. Malley–Duff & Associates,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Supreme Court determined that, because RICO has no internal statute of limitations, a "reasonable" statute of limitations should be applied to RICO claims from the most analogous state statute of limitations. *Id.* at 146, 107 S.Ct. at 2762. In *Agency Holding Corp.,* the Supreme Court determined that a four-year statute of limitations for RICO claims was reasonable.

In the case at bar, the effective limitations period was six years, as stated in Rule 603. The Rule 603 arbitration provision was drafted within the spirit of the Federal Arbitration Act, and this provision has been repeatedly sustained. The six-year claim eligibility requirement for filing claims is a reasonable limitation period, in light of the provision's underlying policy, prohibiting stale claims. Accordingly, if a RICO claim were indeed viable, which is unclear from the facts presented in the record before us, it should have no bearing on the applicability of the Rule 603 eligibility requirement.

### III.

Based on the foregoing reasons, we VACATE the portion of the order which leaves the question of Rule 603's applicability to an arbitrator and REMAND the case to the district court with instructions to enter summary judgment in favor of Roney &

Company, enjoining any further action by the Appellees based on the claims at issue in this appeal.