James J. DARR, Plaintiff,

v.

Mark A. BLEVINS, Individually and as Trustee of Extreme Precision Screw Products, Inc. Employees' Pension Plan and as Trustee of Extreme Precision Inc. Screw Products Employees' Profit Sharing Plan and Vicki L. Blevins, individually and Bruce W. Blevins, individually and as Trustee of Blevins Screw Products, Inc. Employees' Pension Plan and as Trustee of Blevins Screw Products, Inc. Employees' Profit Sharing Plan, and Kaye E. Blevins, individually, and Wayne A. Blevins, individually and as former Trustee of Blevins Screw Products, Inc. Employees' Pension Plan and as former Trustee of Blevins Screw Products, Inc. Employees' Profit Sharing Plan, and Patty A. Blevins, individually, and Roger G. Blevins, individually and as Trustee of Borneman & Peterson, Inc.'s Employee Pension Plan and Borneman & Peterson, Inc.'s Employee Profit Sharing Plan, and Lottie Balasko, individually, and Blevins Screw Products, Inc., and Blevins Screw Products, Inc. Employees' Pension Plan, and Blevins Screw Products, Inc. Employees' Profit Sharing Plan, and Extreme Precision Screw Products, Inc., and Extreme Precision Screw Products, Inc. Employees' Pension Plan, and Extreme Precision Screw Products, Inc., Employees' Profit Sharing Plan, and Borneman & Peterson, Inc., and Borneman & Peterson, Inc.'s Employees' Pension Plan and Borneman & Peterson, Inc.'s Employees' Profit Sharing Plan, and William Howard Blevins, individually, and Jointly and Severally, Defendants.

Civ. A. No. 93–CV–40138–FL.

United States District Court,
E.D. Michigan,
Southern Division,
at Flint.

Sept. 8, 1994.

Michael G. Vartanian, Detroit, MI, for plaintiff.

Joseph H. Spiegel, Southfield, MI, for defendant.

### MEMORANDUM OPINION AND ORDER

NEWBLATT, Senior District Judge.

Before the Court is plaintiff's motion for preliminary injunction (D.E. # 2) and defendants' motion to dismiss (D.E. # 3). Both motions have been fully briefed and argued before the Court. For the reasons that follow, Plaintiff's motion is DENIED, defendants' motion is GRANTED, and this action is hereby DISMISSED.

### Background

Defendants herein are three companies developed by Wayne A. Blevins and operated by his three sons, the companies' respective pension and profit sharing plans ("Plans"), Wayne Blevins' sons—Mark, Bruce, and Roger Blevins—both individually and as trustees of their companies' Plans, and their spouses. The Plans were established and are regulated pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. On January 5, 1993, defendants filed a Statement of Claim with the New York Stock Exchange ("NYSE") against plaintiff, James J. Darr, and against J. Stephen Stout, Prudential–Bache Securities, Inc. ("Prudential–Bache"), Prudential Securities, Inc. ("Prudential"), PaineWebber, Inc. ("Paine-Webber"), and Paul R. Jingozian. On February 8, 1987, the Statement of Claim was amended to add as a claimant William H. Blevins, a defendant herein. Accompanying both the Statement of Claim and its amendment, defendants also executed a Uniform Submission Agreement in which they agreed that the claims submitted, and any related claims, would be arbitrated "in accordance with the Constitution By–Laws, Rules, Regulations, and/or Code of Arbitration Procedure" of the NYSE.

In the arbitration claim, defendants complain of wrongful conduct in connection with investments they made on the advice and under the management of Mr. Stout, a stock broker employed first by Prudential–Bache and later by PaineWebber. Defendants allege that all of their personal and company investments were completely entrusted to Mr. Stout at a time prior to his employment with Prudential–Bache, and remained under his control when he changed employment to Prudential–Bache and later to PaineWebber.

Defendants allege that in 1986 and 1987 Mr. Stout began engaging in a pattern of wild trading in worthless investments, in violation of his fiduciary duties to defendants. Many of these allegedly worthless investments were proprietary products of the Direct Investment Group of Prudential–Bache, of which Mr. Darr was Group President for at least part of the time that Mr. Stout worked for Prudential–Bache. According to defendants, the Direct Investment Group's function was to generate unnecessary fees and commissions from investors through investments in worthless limited partnership interests. Defendants allege that Mr. Stout heavily invested their monies in these Prudential–Bache investments, resulting in a handsome profit to both Prudential–Bache and Mr. Darr.

Defendants allege that the real value of these investments was concealed from them by Mr. Stout, Prudential–Bache, and Paine-Webber through deliberately misleading statements and Mr. Stout's yearly presentations to defendants' employees regarding their investments. Upon discovery that their funds had been grossly mishandled, defendants immediately took legal action by filing the arbitration action with the New York Stock Exchange, a lawsuit in state court, and a federal civil action, all complaining of substantially the same allegedly wrongful conduct. In the arbitration claim, defendants herein are proceeding under a variety of legal theories, including violations of federal securities laws, ERISA, RICO, and other state claims under Michigan statutory and common law. In their Statement of Claim, while refraining from identifying specific dates upon which the complained of investments were made, defendants have indicated that the investments at issue in the arbitration were made between 1986 and 1991.

Mr. Darr was employed by Prudential–Bache from 1979 until his resignation in the latter part of 1988. During the period of 1986 through 1988, Mr. Darr was a Group President, a member of the Board of Directors, and a member of the Executive Committee of Prudential–Bache. In this lawsuit, Mr. Darr seeks an injunction prohibiting defendants from submitting to arbitration any dispute, claim or controversy against him regarding any investments made by defendants prior to January 5, 1987—or February 8, 1987 with respect to William H. Blevins—through enforcement of NYSE Rule 603, and any investments made following Mr. Darr's separation from employment with Prudential–Bache. Defendants seek dismissal of this action, arguing that it is merely an attempt by Mr. Darr to assert a private right of action under the NYSE Rules; a cause of action which does not exist.

### Discussion

■ Defendants are correct that the NYSE Rules do not create a private right of action for their own enforcement. *Craighead v. E.F. Hutton & Co., Inc.,* 899 F.2d 485, 493 (6th Cir.1990). Nevertheless, plaintiff Darr brings this action as one in contract, to enforce the arbitration rules of the NYSE by which defendants have agreed to be governed in their arbitration proceeding. *See* Uniform Submission Agreement and Supplemental Uniform Submission Agreement, Appendix A to this Opinion. Clearly, an agreement between parties to arbitrate disputes is subject to interpretation and enforcement by this Court. *Dean Witter Reynolds, Inc. v. McCoy,* 995 F.2d 649, 650 (6th Cir.1993); *Roney & Co. v. Kassab,* 981 F.2d 894, 897–98 (6th Cir.1992). Moreover, it is a matter of law for the Court to interpret the provisions of the arbitration agreement and determine the scope of claims submissible to arbitration. *Dean Witter,* 995 F.2d at 650; *Roney & Co.,* 981 F.2d at 897–98. Of course, the question underlying defendants' motion to dismiss is dispositive: whether plaintiff Darr has standing to enforce provisions of the Uniform Submission Agreement where plaintiff is not a signatory to that agreement. The Court finds that plaintiff does not. Accordingly, this action must be dismissed.

■ Clearly, Rule 603 of the NYSE Arbitration Rules bars submission to arbitration of any "dispute, claim or controversy ... where six (6) years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy." Any party which has agreed with another to arbitrate any disputes pursuant to the NYSE Rules is restricted by Rule 603 to submit claims arising within six years of the date of filing of the arbitration Statement of Claim. Where a court has jurisdiction over such a contract, the court is bound to rule upon the scope of issues submissible for arbitration as a matter of law. *Dean Witter,* 995 F.2d at 650; *Roney & Co.,* 981 F.2d at 897–98. As noted above, the basis for federal court jurisdiction in these cases is to enforce an action in contract, such an action is not brought under nor derived from the NYSE Rules themselves.

The present case is unique in that plaintiff does not assert the right to have these claims arbitrated—and limited—pursuant to a contract between plaintiff and defendants. Instead, plaintiff seeks a court order to enforce the eligibility for arbitration provision of the NYSE Rules by virtue of the fact that defendants have filed a claim in arbitration before the NYSE and have in doing so agreed to submit to and be bound by the procedures contained within that body's arbitration rules. This Court might have jurisdiction over plaintiff's claim herein had he signed, as a respondent to the arbitration proceeding, the Uniform Submission Agreement which was signed by defendants. Nevertheless, even if plaintiff had signed that agreement, it is not entirely clear that the agreement would have been between the parties to this lawsuit. More likely, the Uniform Submission Agreement is to be viewed as an agreement between the parties individually and the NYSE to submit to arbitration pursuant to that body's rules. In any event, plaintiff has failed to establish himself as a party to a

contract with defendants in which defendants have promised plaintiff that they would arbitrate.[1]

The Court notes, however, that plaintiff is not without a remedy in this matter, and is not prejudiced by dismissal of this action. While this Court lacks jurisdiction over this dispute, the arbitrator still is bound to apply the NYSE Rules. Moreover, the language of Rule 603 is clear, whether it is considered substantive or procedural, and can be ably applied by the arbitrator to determine the permissible scope of the arbitration, even in the absence of a court order.[2] Of course no claim is arbitrable where the "occurrence or event giving rise to the act or the dispute, claim or controversy" occurred more than six years prior to defendants' filing of their Statement of Claim. Identification of the triggering event giving rise to defendants' claims, whether it be the date the securities were purchased or at some other time due to fraudulent concealment, is a matter for determination by the arbitrator.[3]

### Disposition

There being no agreement between the parties to arbitrate, the Court finds that it cannot rule upon the scope of issues submissible in the upcoming arbitration. This Court lacks jurisdiction over the claims made by plaintiff herein. Accordingly, plaintiff's motion for injunctive relief (D.E. # 2) must be and is HEREBY DENIED, defendants' motion to dismiss (D.E. # 3) is GRANTED, and this action is DISMISSED.

SO ORDERED.

---

1. That is not to say that defendants are not bound to arbitrate the disputes submitted, or that defendants are not subject to the Arbitration Rules and procedures of the NYSE. In fact, by signing the Uniform Submission Agreement, defendants have precluded themselves from seeking resolution of the disputes complained of in the Statement of Claim in another forum without dismissal of the arbitration proceeding either by the arbitrator or with the consent of the respondents therein. NYSE Arbitration Rule 604.

2. Likewise, plaintiff's concern that claims asserted by defendants in the arbitration extend beyond the period of time in which plaintiff was employed at Prudential–Bache is misplaced. Whether plaintiff actually committed any wrongdoing, and at what times any wrongful conduct related to defendants' investments may have taken place, are questions of fact for determination by the arbitrator. There is no reason to believe that the arbitrator is any less qualified than this Court to make findings of fact.

3. While plaintiff argues that the Sixth Circuit has rejected any tolling of the six year claim eligibility rule, and defendants argue that the Court of Appeals has held just the opposite, the Court finds that the decision in *Roney & Co.* was neutral on the question of whether fraudulent concealment might toll the effect of the Rule 603 eligibility determination. 981 F.2d at 900. That panel found only that fraudulent concealment was not present in that case. *Id.* It would be within the bounds of rationality to reason that the disclosure or discovery of the fraud or concealed wrong-doing would be the "occurrence or event giving rise to" defendants' claims.