**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. and James MacLachlan, Plaintiffs,**

**v.**

**Valerie A. BURHANS, Individually and as Trustee of the Valerie A. Burhans Trust, Defendant.**

**No. 1:94–CV–616.**

United States District Court,
W.D. Michigan.

April 26, 1995.

Eric S. Richards, Warner, Norcross & Judd, L.L.P., Grand Rapids, MI, for plaintiffs.

D. Michael Kratchman, Rubenstein Plotkin, P.C., Southfield, MI, for defendants.

## *OPINION*

ENSLEN, Chief Judge.

This matter is before the Court on the motion of the defendant Valerie A. Burhans to dismiss this action pursuant to Federal Rule of Civil Procedure 12 and on the motion of the plaintiffs Merrill Lynch, Pierce, Fenner & Smith, Inc. and James MacLachlan for preliminary injunction pursuant to Federal Rule of Civil Procedure 65. For the reasons given below, the motion of the defendant is denied and the motion of plaintiffs is granted.

### I.

This action seeks a permanent injunction preventing the arbitration of various claims before the National Association of Securities Dealers ("N.A.S.D.") arising from several investments purchased by the defendant through the plaintiffs between 1985 and 1987. Defendant is an individual resident of Grand Rapids, Michigan. Plaintiff Merrill Lynch is a securities broker-dealer registered with the Securities and Exchange Commission and the N.A.S.D. Plaintiff MacLachlan is the individual representative of Merrill Lynch in Michigan who sold investments to Burhans between 1985 and 1987.

More particularly, between 1985 and 1987, MacLachlan sold to Burhans interests in some 13 limited partnerships: namely,

1. Venture Partners;
2. Arvida/JMB Partners;
3. SCA Tax Exempt;
4. Oxford Resident;
5. MLH Income Realty;
6. ML Media Partners;
7. ML Delphi Partners;
8. JMB Income;
9. Capital Realty L.P. 85;
10. Mauna LOA Macadami Partners;
11. Oxford Tax Exempt;
12. CRI Insured Mortgage Investment III; and
13. Transco Exploration Partners.

The last of these purchases (a purchase of Arvida/JMB Partners) was purchased on Sept. 21, 1987. Burhans claims that she purchased these investments because of misrepresentations made by MacLachlan as to the market value of the interests. She claims that she did not discover these misrepresentations until 1992 when Merrill Lynch began to lower the market value of these investments in her monthly account statements. She calculates her total pre-tax loss caused by these misrepresentations as in excess of $300,000.

On September 24, 1993, defendant instituted an arbitration proceeding before the N.A.S.D. to recover said damages plus interests, costs, exemplary damages, and attorney fees. The filing of this proceeding was dictated in part by the Customer Agreement between Merrill Lynch and Burhans which stated in pertinent part that:

> Any dispute hereunder shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Directors of the New York Stock Exchange, Inc., or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. as the undersigned may elect.

This provision is also significant to this controversy because of the terms of the N.A.S.D.Code. Section 15 of the N.A.S.D.Code provides in pertinent part:

> No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy.

Section 25(b)(1) of the Code also provides in pertinent part:

> Within twenty (20) business days from receipt of the Statement of Claim, Respondent(s) shall serve each party with an executed Submission Agreement and a copy of Respondent's Answer.

In light of Section 25, upon the filing of the N.A.S.D. claim, the N.A.S.D. Arbitration Department sent to plaintiffs on November 18, 1993, a blank Uniform Submission Agreement and a letter requesting that they sign and return the Submission Agreement and their Statement of Answer to the N.A.S.D. Plaintiffs failed to sign and return the Submission Agreement to the N.A.S.D. because the Submission Agreement would obligate them to "submit the present matter in controversy ... to arbitration."

Following the filing of the N.A.S.D. claim, plaintiffs filed a petition to stay the arbitration with the New York Supreme Court. However, on August 18, 1994, the action was dismissed by Justice Jane S. Solomon on the ground that the New York Supreme Court lacked personal jurisdiction over Burhans. Following the dismissal, this action seeking permanent injunction and declaratory relief was filed on September 13, 1994. No further proceedings have occurred before the N.A.S.D., though, because the parties have agreed that such proceedings should be delayed until the present motions for dismissal and preliminary injunction are decided.

## II.

■ Defendant's motion to dismiss this action because of lack of standing is in the nature of a motion to dismiss because of lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 807 n. 8 (11th Cir.1993). Generally speaking, the standing requirement imposed by Article III of the United States Constitution is satisfied by showing that:

> [1] [plaintiffs] have suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant;
>
> [2] [the] injury fairly can be traced to the challenged action; and,
>
> [3] [the injury] is likely to be redressed by a favorable decision.

*Woods v. Milner,* 955 F.2d 436, 439 (6th Cir.1992) (citations omitted).

Plaintiffs' complaint clearly establishes that plaintiffs suffer from a "threatened injury"—namely, the arbitration of a matter which they had agreed to not arbitrate. Plaintiffs' complaint likewise establishes a relationship between the injury and the challenged conduct. Defendants' challenge to standing, rather, concerns the third element, which asks whether the Court will have authority to remedy the threatened injury.

■ It is defendant Burhans' contention that plaintiffs clearly lack standing to enforce Section 15 of the N.A.S.D.Code because they have failed to sign the Uniform Submission Agreement—which adopts the N.A.S.D.Code. This is significant because there must be some arbitration agreement affecting interstate commerce in order to give this Court jurisdiction to enforce the arbitration agreement (and the provisions of the N.A.S.D.Code) pursuant to Title 9 United States Code Section 2. *See Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 493 (6th Cir.1990); *Darr v. Blevins,* 864 F.Supp. 27 (E.D.Mich.1994). However, as the plaintiffs have noted, they have standing without regard as to whether they have signed the Submission Agreement because plaintiffs were originally party to a Customer Agreement with defendant Burhans that incorporates Section 15 of the N.A.S.D.Code. Accordingly, plaintiffs have standing to assert Section 15 as parties to that agreement.

---

**1.** The Court notes that defendant technically made this motion under Rule 12(b)(6)—which allows dismissal when the complaint fails to state a claim for which relief may be granted. The distinction between a Rule 12(b)(1) motion and a Rule 12(b)(6) motion is largely a technical one which is not important to this controversy because the facts relating to the Customer Agreement and Submission Agreement are not disputed and are consistent with the allegations alleged in the complaint.

■ Furthermore, assertion of the Section 15 limitation on the scope of arbitration does not conflict with plaintiffs' agreement to abide by the Section 25 requirements that plaintiffs submit to arbitration—as argued by the defendant. Plaintiffs are only required to submit to arbitration those matters which are arbitrable under Section 15. The Sixth Circuit Court of Appeals has said as much by declaring that it is the courts, and not the arbitrator, that have authority to determine whether a matter is within the scope of arbitration, and that parties have a right to seek an injunction against the arbitration of non-arbitrable matters. *See Dean Witter Reynolds, Inc. v. McCoy*, 995 F.2d 649 (6th Cir. 1993); *Roney & Company v. Kassab*, 981 F.2d 894, 899 (6th Cir.1992); *see also AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648–49, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986).

Therefore, the Court determines that plaintiffs have standing to seek declaratory and injunctive relief. For this reason, defendant's motion to dismiss this action pursuant to Rule 12 is denied.

### III.

This brings the Court to the question of whether plaintiffs are entitled to the issuance of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. In connection with a motion for preliminary injunction under Rule 65, the Court must evaluate four factors: (1) the likelihood of success on the merits; (2) the irreparable harm that could result if the injunction is not issued; (3) the impact on the public interest; and (4) the possibility of substantial harm to others. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992). This evaluation focuses on all four factors—rather than any particular factor. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228–30 (6th Cir.1985). It is sufficient for a preliminary injunction if the movant shows that there are serious questions which are "fair grounds for litigation" and the other factors strongly favor granting the injunction. *Id.*

In this case, most of the parties' briefing and argument have, and rightly so, focused on whether plaintiffs are likely to succeed on the merits. These arguments recognize, for the most part, that since the entire aim of this lawsuit is to prevent arbitration that allowing the arbitration to proceed uninterrupted would result in a type of "irreparable harm" that the courts are unwilling to tolerate. *See, e.g., AT & T Technologies, supra.* Such arguments (and the case law) also assume that it is not in the public interest to allow for the arbitration of nonarbitrable matters. The pressing question here, though, is whether plaintiffs are likely to prevail on their claim that the defendant's N.A.S.D. proceeding is not arbitrable.

■ While the Sixth Circuit Court of Appeals has already determined that it is the courts, and not the arbitrators, who determine whether a matter falls within the scope of arbitration,[2] it has not yet determined how to calculate the running of the six year period specified in Section 15. If that period is treated like a statute of limitations, its accrual will be affected by fraud and concealment (which under state law extend relevant limitations periods[3]). *See, e.g., Davis v. Keyes*, 859 F.Supp. 290 (E.D.Mich.1994). If, on the other hand, the period is treated like a jurisdictional limitation (one defining the limits of the arbitrator's duties), its accrual is unaffected by fraud and begins to run on the date of the purchase of the investment.[4] *See, e.g., Dean Witter Reynolds, Inc. v. McCoy*, 853 F.Supp. 1023 (E.D.Tenn.1994).

This is not an easy choice to make because, as the authorities point out, although dicta in Sixth Circuit opinions suggest treating the period like a statute of limitation, the logic of its previous opinions, as well as holdings of the Third and Seventh Circuit Courts of Ap-

---

**2.** *See McCoy, supra; Kassab, supra; see contra, Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750 (5th Cir.1995); *FSC Sec. Corp. v. Freel*, 14 F.3d 1310 (8th Cir.1994).

**3.** *See, e.g., Lumber Village, Inc. v. Siegler*, 135 Mich.App. 685, 694, 355 N.W.2d 654 (1984).

**4.** The Court notes that in some cases, not applicable here, the running of the six year period may be tolled under Section 18 of the N.A.S.D.Code.

peals, dictate treating Section 15 as a jurisdictional limitation. *See PaineWebber, Inc. v. Hofmann,* 984 F.2d 1372 (3rd Cir.1993); *Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509 (7th Cir.1992). This Court believes that the latter approach should prevail because it is most consistent with the duties assigned to the Court by the Court of Appeals to enforce limitations contained in arbitration agreements.[5]

■ Accordingly, the Court determines that it is likely that the claims that are the subject of this N.A.S.D. arbitration accrued on or before Sept. 21, 1987 (the date of purchase of the interest in Arvida/JMB [6]). The Court further determines that it is likely that—because more than six years passed from that date to the date that Burhans filed her claim for arbitration on Sept. 24, 1993— the claims that are the subject of arbitration are not arbitrable under Section 15 of the N.A.S.D.Code. Therefore, the Court determines that plaintiffs are likely to prevail on their claim for a permanent injunction enjoining the N.A.S.D. arbitration of Burhans' claims as well as the litigation of those claims. Accordingly, the Court determines that plaintiffs are entitled to a preliminary injunction under Federal Rule 65 staying the arbitration of Burhans' claims before the N.A.S.D. and enjoining the litigation of those claims.

IV.

In accordance with this Opinion, the Court shall enter an order granting plaintiffs' motion for preliminary injunction, denying defendant's motion to dismiss, and preliminarily enjoining arbitration and litigation of defendant's claims.

*ORDER*

In accordance with the Opinion entered this date;

IT IS HEREBY ORDERED that plaintiffs Merrill Lynch, Pierce, Fenner & Smith, Inc. and James MacLachlan's motion for preliminary injunction (pleading no. 2) is **GRANTED.**

IT IS FURTHER ORDERED that a preliminary injunction shall issue upon the Court's receipt from the plaintiffs of a bond securing against costs and damages of a wrongful injunction (as required by Fed. Rule of Civ. Pro. 65(c)) in the amount of three hundred thousand dollars ($300,000.00).

IT IS FURTHER ORDERED that defendant Valerie Burhans' motion to dismiss (pleading no. 7) is **DENIED.**

---

5. The Court's duties also likely require that the Court enjoin the defendant from filing suit for the claims which are the present subject of arbitration because the arbitration agreement operates as a waiver of judicial remedies. *See McCoy, supra,* at 1032–34.

6. The purchase date and not the settlement date is the relevant date for determining the accrual of the six year period. *See Radiation Dynamics, Inc. v. Goldmuntz,* 464 F.2d 876, 890 (2nd Cir. 1972).