**SMITH BARNEY, INC., Plaintiff,**

v.

**Roger SARVER and Concetta Sarver, Defendants.**

**No. 95–70060.**

United States District Court, E.D. Michigan, Southern Division.

July 27, 1995.

Clarence L. Pozza, Jr., Thomas R. Cox (argued), Miller, Canfield, Paddock & Stone, Detroit, MI, for plaintiff.

Walter L. Baumgardner, Robert Wagner, Musilli, Baumgardner, Wagner & Parnell, St. Clair Shores, MI, for defendants.

---

1. The standard arbitration clause in the parties' agreement is located at Paragraph 14. It reads as follows:

This agreement shall inure to the benefit of your successors and assigns, shall be binding on the undersigned, my heirs, executors, administrators and assigns and shall be governed by the laws of the State of New York. Unless unenforceable due to federal or state law, **any controversy arising out of or relating to my accounts,** to transactions with you, your officers, directors, agents and/or employees for me **or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the National**

*OPINION AND ORDER*

FEIKENS, District Judge.

## I. BACKGROUND

On July 6, 1987, the respondents, Roger and Concetta Sarver, opened a stock brokerage account with Shearson Lehman Brothers Inc. ("Shearson") and signed a standard form Client Agreement which provided for resolution of account-related disputes by arbitration in accordance with the rules of one of three broker organizations.[1] The parties appear to agree that the National Association of Securities Dealers, Inc.'s ["NASD's"] rules apply. The contract also provided that the laws of New York would apply.

On or before September 14, 1988, allegedly acting upon a recommendation by an agent or agents of Shearson, the Sarvers invested in TWA, Inc. Senior Notes. The Sarvers allege that the broker falsely led them to believe their investment was secure after they had emphasized their concern that the principal be protected from risk of loss. Apparently, they suffered a large loss (their claim for damages is for $70,000).

The Sarvers allege that they first became aware that Shearson had perpetrated a fraud on them in February of 1991. On September 24, 1994, the Sarvers filed action No. 94–04012 against Shearson with the NASD Department of Arbitration and a Uniform Submission Agreement dated August 31, 1994. In their claim, they allege violations of Rule 10b–5 of the 1934 Securities Exchange Act, the NASD Rules of Fair Play, Article III, Section 2, Sections 12(1) and (2) of the 1933

**Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc., as I may elect.** If I do not make such election by registered mail addressed to you at your main office within 8 days after demand by you that I make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. This agreement to arbitrate does not apply to future disputes arising under certain of the federal securities laws to the extent it has been determined as a matter of law that I cannot be compelled to arbitrate such claims. (emphasis added)

Securities Act, common law fraud, and negligence.

The petitioner, Smith Barney, Inc. ("Smith Barney"), acquired certain assets and liabilities of Shearson on July 30, 1993. Smith Barney filed its complaint with this court on January 5, 1995. It seeks to enjoin the plaintiffs from pursuing their claim before the Department of Arbitration of the NASD, on the grounds that they are time-barred under Section 15 of the NASD Code of Arbitration Procedure ("NASD Code") and under New York's statute of limitations, or alternatively, Michigan's. The Sarvers counter that Smith Barney has breached the Client Agreement by bringing this action and that the Board of Arbitration has jurisdiction over the issue of whether the Sarvers' substantive claims are eligible for arbitration. Both parties have filed for summary judgment.

## II. ISSUES

The issues presented are: 1) whether this court has jurisdiction over this cause of action; 2) if so, whether respondents Roger and Concetta Sarver are barred from maintaining claims against petitioner Smith Barney's predecessor in interest, Shearson, before the Department of Arbitration of the National Association of Securities Dealers, Inc. ("NASD"), under Section 15 of the NASD Code of Arbitration Procedure or the applicable statute of limitations; and 3) whether petitioner Smith Barney's filing of its complaint and petition for injunctive relief is a breach of the contract of arbitration existing between the parties under § 6 of the NASD Code of Arbitration Procedure.

## III. ANALYSIS

*This Court's Preliminary Jurisdiction and the Sarvers' Breach of Contract Claim*

The petitioner requests that this court grant an injunction against arbitration of respondents' claims relating to the Client Agreement pursuant to its authority under § 4 of the Federal Arbitration Act. The

respondents assert that Smith Barney breached its contractual obligation to refrain from bringing claims pending before the arbitration board to court. In support of this position, they refer to a provision of the NASD Code of Arbitration Procedure, incorporated into their agreement. It reads as follows:

> No party shall during the arbitration of any matter, prosecute or commence any suit, action or proceeding against any other party touching upon any matter referred to arbitration pursuant to this code.

NASD Code of Arbitration Procedure § 6.

I find that Smith Barney did not breach the Client Agreement by bringing this case to the attention of the court. The parties' conflicting interpretations of the contractual provisions have produced the present motion; at issue is whether the respondents' claims are arbitrable. It is established law that "[w]hether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court." *Litton Fin. Printing Div., Inc. v. National Labor Relations Bd.,* 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). Petitioner was entitled to seek the court's opinion as to which claims, if any, it is obligated to arbitrate. This court may entertain motions to enjoin arbitration, *see, e.g., Dean Witter Reynolds, Inc. v. McCoy,* 995 F.2d 649 (6th Cir.1993); *Roney and Co. v. Kassab,* 981 F.2d 894 (6th Cir.1992), in the course of performing its duty to interpret the provisions of arbitration agreements in order to determine the scope of claims which are subject to arbitration in the first instance.[2] *See Darr v. Blevins,* 864 F.Supp. 27, 29 (E.D.Mich.1994).

*Interpretation of the Arbitration Clause*

Because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit", *AT & T Technologies v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89

---

2. Even if the parties could contract around the petitioner's right to have this court decide the initial arbitrability issue, § 6 would not apply, because arbitration did not commence when the

Director of Arbitration for the NASD served the Claim for Arbitration on the petitioner; this is a ministerial function that takes place prior to arbitration.

L.Ed.2d 648 (1985), quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), I turn to the Client Agreement. In this case, the language of the arbitration clause is quite broad; it provides that **"any controversy"** arising out of or relating to the Client Agreement or the Sarvers' transactions with Shearson should be directed to arbitration (emphasis added). *See* n. 1, *supra*, for the text of the clause. This language is sufficient to activate the presumption that a dispute over the interpretation of § 15 of the NASD Code, incorporated into the contract by reference, should go to the arbitrators "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T*, 475 U.S. at 650, 106 S.Ct. at 1419. The arbitration clause, however, goes on to incorporate the NASD Code of Arbitration Procedure by reference, including § 15, which provides that:

> [n]o dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim, or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

In keeping with the Sixth Circuit Court of Appeals' holding in *Roney and Company v. Kassab*, 981 F.2d 894, 899 (6th Cir.1992), the broad language of the arbitration clause must be read in conjunction with § 15 when determining which disputes are subject to arbitration.

The petitioner would extrapolate the reasoning of *Roney* into a hard and fast rule that dictates that a district court always makes the determination as to what the triggering "occurrence or event" is for purposes of testing whether the six-year period of § 15 has expired. I do not believe that is a necessary consequence of *Roney* in every case. In *Roney*, the court of appeals noted that the appellees had not stated a sufficient claim for fraudulent concealment. Therefore, because the only possible triggering event, presumably the purchase of the stock, had taken place more than six years before the claim for arbitration was pressed, the court of appeals found that the eligibility period expired. Essentially, there was no dispute for the arbitrators to resolve, because the appellees had not shown that tolling of the six-year period was within the realm of possibility.

Similarly, in this case, the respondents failed to sufficiently plead fraudulent concealment, both in their claim for arbitration and their answer to the petitioner's complaint in this case. Nowhere do they indicate that Smith Barney or its predecessor, Shearson, committed some affirmative act to conceal its alleged wrongdoing, nor do they assert a basis for finding that a fiduciary duty existed between them and their broker. These are the required elements of fraudulent concealment. *Roney*, 981 F.2d at 900. Therefore, tolling of the limitations period of § 15 is not within the realm of possibility, according to the pleadings. It follows, then, that the effective triggering event must have been the date of purchase of the stock, and that therefore, the Sarvers' claims, as stated at present, are not arbitrable because more than six years passed between the stock purchase and the filing of the claim. *See Davis v. Keyes*, 859 F.Supp. 290, 292 (E.D.Mich.1994). Therefore, at this point, arbitration of the Sarvers' claims must be enjoined.

At the present time, however, I decline to grant either party's motion for summary judgment. I note the fact that the respondents' representative, at oral argument, for the first time clearly asserted that the Sarvers' broker engaged in fraudulent concealment. Had this been properly pleaded initially, the case might well have been referred to arbitration; as noted above, I do not believe that *Roney* necessarily precludes such a result.

In the event that the respondents amend their pleadings to satisfactorily state a case of fraudulent concealment, then this court might be willing to revisit arguments as to the tolling of the six-year period. In that case, there would be a genuine controversy that possibly could be referred to arbitration.

For the moment, in the absence of such a controversy, properly set out by the plead-

ings, arbitration of the respondents' claims is enjoined, and both motions for summary judgment are denied.

IT IS SO ORDERED.