**PRUDENTIAL SECURITIES INCORPORATED,**
Plaintiff,

v.

**Greg E. LaPLANT, as Trustee for Marie LaPlant, Defendant.**

Civ. A. No. 93–2223–JWL.

United States District Court,
D. Kansas.

July 22, 1993.

Timothy J. Sear, Cathy J. Dean, and Joseph R. Colantuono, Polsinelli, White, Vardeman & Shalton, Overland Park, KS, for plaintiff.

John J. Miller, Nygaard & Associates, Overland Park, KS, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

In April of 1993, the defendant commenced an arbitration proceeding against plaintiff Prudential Securities ("Prudential") before the National Association of Securities Dealers, Inc. ("NASD"), complaining about various transactions dating back to 1985. On May 26, 1993, Prudential filed this action, seeking a preliminary injunction, permanent injunction and declaratory judgment all aimed at staying the arbitration proceedings on the theory that the claims were not subject to arbitration. Prudential also filed a motion for preliminary injunction (Doc. # 2),

and defendant responded with its own motion to compel arbitration and to dismiss or stay this proceeding (Doc. # 6). By agreement of the parties, those motions were treated as cross-motions for summary judgment and a stipulation of facts was filed on July 1, 1993, with the matter submitted to the court for a hearing on July 2, 1993 on issues of ultimate as well as temporary relief. At the conclusion of the hearing, the court took the matter under advisement and, again upon agreement of the parties, entered a preliminary injunction staying the arbitration proceeding pending this order.

Because the parties have stipulated to those facts necessary for the determination of these motions and there are no issues of material fact left to be resolved, this case is ripe for summary judgment. Fed.R.Civ.P. 56. For the reasons set forth below, the court grants each motion in part and denies each motion in part. Those claims which are based on an occurrence or event which occurred more than six (6) years before the filing date of the arbitration case are stayed and all other claims may proceed in arbitration.

## II.  Facts

In July, 1985 defendant Greg LaPlant, as trustee for Marie LaPlant, opened an account at Prudential's Kansas City, Missouri branch. Defendant, through his Prudential account, invested $24,000 in the Polaris Aircraft Income Fund I (the "Polaris investment") on or about July 22, 1985. On August 21, 1987, defendant purchased two additional investments in his Prudential account, Prudential–Bache Energy Income Fund P–19, which was purchased for $5,000, and Prudential–Bache Energy Growth Fund 3, which was also purchased for $5,000. In January of 1990, defendant purchased additional investments in his Prudential account, including the purchase of Prudential–Bache Energy Money Fund P–26 for $17,500.

In April of 1993, defendant commenced the arbitration proceeding before the NASD by filing a Uniform Submission Agreement and Statement of Claim. Prudential is a member of the NASD, and the parties had incorporated the NASD Code of Arbitration Procedure into their agreement to arbitrate. Defendant commenced the arbitration pursuant to Section 12(a) of the NASD Code of Arbitration Procedure, which provides that the parties agree to submit to arbitration "[a]ny dispute, claim or controversy eligible for submission ... between a customer and [Prudential] ... upon the demand of the customer." In his Statement of Claim, defendant alleged claims for violations of the Kansas and federal securities acts, fraud and misrepresentation, negligence, breach of contract and violation of NASD rules and breach of fiduciary duty in connection with the losses suffered by the various investments.

Prudential contends that under the NASD Code of Arbitration, defendant's claims against Prudential are ineligible for arbitration. Prudential argues that because Section 15 of the NASD Code is a substantive contractual limitation on what claims the parties have agreed to submit to arbitration, the question of arbitrability is strictly a matter for the court to decide. Prudential then contends that because claims arising out of the July, 1985 Polaris investment purchase are based on events which occurred more than six years before the initiation of arbitration, Section 15 makes those claims ineligible for arbitration. Prudential further argues that the remaining claims regarding the other purchases should not proceed to arbitration because it did not agree to arbitrate claims barred by the applicable statutes of limitation, which it contends is the circumstance here.

In response to Prudential's contentions, defendant asserts that the six year period set forth in Section 15 is a procedural limitation which begins to run at the date of discovery of a claim, not from the date of purchase. In the alternative, defendant contends that even under Prudential's interpretation of Section 15, his claims regarding the limited partnership investment purchases occurring in 1987 and 1990 are eligible for arbitration because the question of whether or not a claim is barred by a statute of limitations is to be decided by the arbitrator and is not a matter of the scope of the arbitration agreement. Defendant then contends that because those claims are clearly eligible for arbitration, for

reasons of judicial economy the court should order that the claims relating to the Polaris investment also be arbitrated.

### III. Discussion

In order to understand the issue confronting the court in this case, it is necessary to briefly review the underlying principles of arbitration law. Fundamentally, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Accordingly, "whether or not [a party is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Id.* 475 U.S. at 649, 106 S.Ct. at 1419 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964).

Expanding on these general principles, the court in *PaineWebber Inc. v. Hofmann*, 984 F.2d 1372 (3rd Cir.1993) stated:

In resolving the arbitrability of particular claims, however, "a court is not to rule on the potential merits of the underlying claims," no matter how frivolous the claims may appear to the court. Moreover, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" This presumption notwithstanding, "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." And "[i]f the court determines that ... the matter at issue clearly falls outside of the substantive scope of the agreement, it is obliged to enjoin arbitration."

*Id.* at 1377 (citations omitted).

■ The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By its terms, the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4. The central purpose behind the FAA is to ensure judicial enforcement of privately made agreements to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). A second purpose is to encourage efficient and speedy resolution of disputes. However, when the two purposes conflict, the Supreme Court has instructed that courts should rigorously enforce the contractual terms of the agreements to arbitrate, even if the result is "piecemeal" litigation. *Id.* at 221, 105 S.Ct. at 1242. This court has heeded that instruction previously. *See Paine-Webber Inc. v. Fowler*, 791 F.Supp. 821 (D.Kan.1992).

■ At the hearing on this matter, the parties acknowledged that they incorporated the NASD rules of arbitration into their agreement to arbitrate. Therefore, their agreement to arbitrate is governed, among other things, by the provisions of Section 15 of the NASD Code of Arbitration procedure which provides:

No dispute, claim or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

The parties disagree as to the proper interpretation of Section 15. Prudential argues that it should be read as a statute of repose, prohibiting arbitration of any claim where more than six years have elapsed from the event giving rise to the claim. Therefore, because defendant's arbitration pro-

ceeding was filed more than six years after his purchase in 1985 of the Polaris investment, all claims arising out of the purchase of that investment are not eligible for arbitration. Defendant, on the other hand, argues two alternative theories. First, he argues that Section 15 should not be read as a statute of repose, rather, the six year period should be read as a procedural limitation which does not begin to run until the discovery of the potential cause of action. Defendant argues that because he did not discover the claims regarding the Polaris investment purchase until late 1992, those claims are not barred by Section 15. In the alternative, defendant argues that even if this court were to find that the Polaris investment claims are barred by Section 15, the other claims most definitely are not barred, and that the court should direct the Polaris investment claims to arbitration along with the other claims pursuant to powers he contends are given the court in the last sentence of Section 15.

This court agrees with the reasoning of the court in *PaineWebber v. Hofmann,* 984 F.2d 1372 (3rd Cir.1993) that the language of Section 15 unequivocally establishes a substantive limitation on the claims that may be submitted to arbitration. *Id.* at 1378, *see also Roney and Co. v. Kassab,* 981 F.2d 894 (6th Cir.1992); *Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509 (7th Cir.1992); *Paine-Webber Inc. v. Hartmann,* 921 F.2d 507 (3rd Cir.1990). That is, Section 15 acts as a statute of repose, and bars arbitration of those claims that are not submitted to arbitration within six years from the occurrence or event giving rise to the claim. This court rejects defendant's argument that the six year limitation period should be read as a procedural requirement, subject to tolling until the discovery of a claim. To do so would run counter to the clear language of the section,

incorporated as a part of the parties' contract, and would violate the court's duty to rigorously enforce the contractually defined obligation to arbitrate.

Defendant argues that even if Section 15 is interpreted as a substantive bar, this court should order all claims to arbitration pursuant to the language in the last sentence of Section 15, which provides that the section shall not apply "to any case which is directed to arbitration by a court of competent jurisdiction." Defendant argues that because some of his claims clearly are eligible for arbitration,[1] the court should also order to arbitration the claims regarding the initial purchase of the Polaris investment, which would be barred by the six-year period, to prevent splitting defendant's actions between the court and arbitrator and to encourage efficient resolution of the disputes. In effect, defendant contends that the language in the last sentence of Section 15 empowers the court, in the event there are some claims that are arbitrable and some that are barred by the six-year period, to order all the claims sent to arbitration.

In support of his argument, defendant cites a recent unreported decision from the Northern District of Ohio. *Prudential Securities Inc. v. Seimetz,* No. 5:93 CV 0647 (N.D. Ohio May 21, 1993). In *Seimetz,* plaintiff Prudential sought a declaratory judgment that defendant's claims were ineligible for submission to arbitration before the NASD and sought to permanently enjoin any such arbitration. Defendant filed a separate motion to compel arbitration and to stay. The court found that certain of the claims filed by defendant were clearly eligible for arbitration, while others were arguably ineligible.

1. The court finds that defendant's claims based upon the purchases occurring in 1987 and 1990 are clearly within the six-year period of Section 15 and thus eligible for arbitration. The court rejects Prudential's argument that these claims should not be allowed to go to arbitration due to the alleged expiration of the applicable statutes of limitation. It is well settled that the determination of all time-bar defenses, including the statute of limitations, is to be made by the arbitrator, not the courts. *See Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 121 (2nd Cir.1991); *Durham County v. Richards & Associates, Inc.,* 742 F.2d 811 (4th Cir.1984). The court can find no basis in the parties's agreement to arbitrate for Prudential's notion that it did not agree to arbitrate claims barred by the statute of limitations. It might similarly argue that it did not agree to arbitrate substantively meritless claims. In either case, such a defense raised by Prudential is one to be decided by the arbitrator and is not one which is founded on any limitation in the scope of the agreement to arbitrate.

The court noted that under the factual circumstances of the case, the parties may be forced to engage in two separate proceedings: one before the arbitration panel for claims which were clearly eligible for arbitration, and another before the court for claims which were arguably ineligible. The court then stated that under Section 15, the court had the authority to order arbitration of claims that are more than six years old. The court stated that it made "no sense to require duplicative proceedings, time consuming and expensive not only for the parties and counsel but also for this Court and the NASD arbitration panel, for the difference of a mere nine-months worth of claims that are only arguably ineligible for arbitration." The court therefore proceeded to order all the claims sent to arbitration.

■ While we find the court's approach in *Seimetz* appealing from a judicial economy and litigation efficiency standpoint, we simply cannot find a basis for the court's conclusion that Section 15 gives a court the right to make a determination that an issue goes to arbitration when it is more than six years old. This court is not convinced that the NASD intended to have a provision in its Code which would cause parties, by private contract incorporating those rules, to confer authority upon courts to override the six-year rule and send claims to arbitration at the court's own discretion. This court believes that if the NASD had intended such a result, it would have used language that was much more clear on that point. This court believes that the language in the last sentence of Section 15 is more logically interpreted as an attempt to clarify that if a court, for whatever reason, sends something to arbitration that was based on an event more than six years before the date of filing, then the NASD will not create some sort of jurisdictional standoff by refusing to accept the case. It will, presumably, leave the matter to an aggrieved party, under that scenario, to seek relief by appeal rather than locking its doors against the court order.

■ Having determined that the six year period of Section 15 is a substantive bar to arbitration, and thus cannot be tolled, and finding no basis to send all of the claims to

the arbitrator for convenience sake, it is necessary, as pointed out in *Hofmann,* to analyze the specific claims of defendant to determine which ones are eligible for arbitration. The court finds that any misrepresentations which are alleged to have taken place more than six years before the filing date, any negligence which is alleged to have taken place more than six years before the filing date, any violation of contract or NASD rules, including suitability assessments, and all breaches of fiduciary duty which are alleged to have occurred more than six years before the filing date are not subject to arbitration. This would include at a minimum any claims arising out of the initial purchase of the Polaris investment in July, 1985. These claims, which are based on events which actually occurred more than six years before the filing date, are subject to litigation in this court. Defendant is given leave to file a counterclaim in this case on or before August 20, 1993, setting forth any such claims, including whatever basis defendant might have to contend that the statute of limitations has been tolled as to any such claims. The court will stay proceeding on the merits of these claims pending arbitration of the rest of the claims to avoid any duplication of remedies or inconsistent results.

■ Conversely, the stay on arbitration is lifted for all claims which contend any violation of the Kansas or Federal securities acts, any fraud, negligence or breach of contract, NASD rules or breach of fiduciary duty (whether based on an actual sale, on a cover-up theory, a continuing duty to assess suitability theory, or otherwise) which actually occurred within the six-year period prior to the arbitration filing. These claims will proceed to arbitration. It will be the duty of the arbitrator to decide whether or not an actual claim was stated upon which relief could be granted under any of such theories and whether any are barred by an applicable statute of limitations.

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** Prudential's motion for a preliminary injunction (Doc. # 2) and defendant LaPlant's motion to compel arbitration and to dismiss or stay this proceeding (Doc.

# 6) are granted in part and denied in part. All claims which are based on events which actually occurred more than six years before the filing date of defendant's arbitration are not subject to arbitration, and are instead subject to litigation in this court. Defendant is given until August 20, 1993 to file a counterclaim in this case setting forth any such claims, including whatever basis the defendant might have to contend that the statute of limitations had been tolled as to any such claims. Following the filing of defendant's counterclaim, the court will stay any proceeding on the merits of those claims pending arbitration of the remaining claims.

The stay on the arbitration is lifted as to any claims which contend a violation which actually occurred within the six-year period, whether based on an actual sale, on a cover-up theory, a continuing duty to assess suitability theory, or otherwise. It is ordered that these claims proceed in arbitration.

**IT IS SO ORDERED.**