**VESTAX SECURITIES CORPORATION,**
**Plaintiff,**

v.

**Diane M. DESMOND, Defendant**
**and Third–Party Plaintiff,**

v.

**NATIONAL ASSOCIATION OF**
**SECURITIES DEALERS,**
**Third–Party Defendant.**

No. 94–73220.

United States District Court,
E.D. Michigan,
Southern Division.

July 20, 1995.

Dennis J. Levasseur, Bodman, Longley, Detroit, MI, for Plaintiff.

Anthony V. Trogran, Jr., Weisman, Trogan, Bingham Farms, MI, for Defendant and Third–Party Plaintiff.

Sharon M. Woods, Daniel J. LaCombe, Barris, Sott, Detroit, MI, for Third–Party Defendant.

### *OPINION*

COHN, District Judge.

#### I. *Introduction*

Defendant Diane M. Desmond (Desmond) filed a statement of claims in arbitration before the National Association of Securities Dealers (NASD) against plaintiffs Vestax Securities Corporation (Vestax), Mutual Service Corporation (MSC), Tezco Financial (Tezco) and Timothy Zimcosky (Zimcosky), alleging fraudulent concealment and breach of fiduciary duty, among other things.[1] Thereafter, Vestax brought a suit in this court challenging Desmond's right to arbitrate her claims and filed a motion pursuant to Fed.R.Civ.P. (FRCP) 65, for a preliminary injunction to enjoin Desmond from pursuing and continuing the arbitration and a motion pursuant to 28 U.S.C. § 2201 and FRCP 57, for a declaratory judgment barring Desmond from pursing her claims against Vestax in the future either in court or arbitration. Desmond then filed a motion for leave to file a third party complaint against NASD seeking a declaratory judgment that the ruling of this Court would determine the eligibility of Desmond's claims before NASD. After a hearing on the motions, the Court denied Vestax's motions without prejudice and granted Desmond's motion for leave to file a third party complaint.[2]

Desmond filed a third-party complaint then filed an amended third party complaint adding claims against NASD for failing to disclose its relationship with the attorney representing Zimcosky, Tezco and MSC in arbitration. NASD filed a motion to dismiss the third party complaint. MSC filed a motion to intervene in the third party suit and a motion to dismiss the complaint. These motions are now before the Court.

The Court's discussion with the lawyers at a hearing on NASD and MSC's motions on April 19, 1995, indicated that there is some confusion as to the Court's decision on Vestax's prior motion for injunctive relief and, in particular, the issue of fraudulent concealment. Therefore, Part III of this Opinion will discuss the fraudulent concealment issue and expound on the Court's prior denial of Vestax's motion and Part IV will address the motions concerning Desmond's third party complaint. For the reasons that follow, the Court will enter an order granting NASD's motion to dismiss the third-party complaint.

---

**1.** Desmond's statement of claims also alleged: breach of contract, conspiracy, promissory estoppel, conversion, negligence, malpractice, breach of fiduciary duty, breach of Michigan securities law, violation of the Michigan Consumer's Protection Act.

**2.** *See* Amended Order dated November 3, 1994.

MSC's motions concerning the third-party complaint will consequently be rendered moot. The November 3, 1994, Amended Order denying Vestax's motion for injunctive relief will remain in effect.

## II. *Background*

### A.

In the spring of 1985, Desmond contacted Zimcosky who was president of Tezco Financial, Inc. (Tezco), a registered investment advisory firm. Zimcosky was licensed to sell securities as a registered representative of MSC, a licensed broker-dealer. Desmond sought Zimcosky's advice regarding the investment of $150,000 she had received through a divorce settlement. At the time, Desmond was 47 years old and without any investment experience.[3]

Desmond explained this lack of experience to Zimcosky and said that she had conservative investment goals and expectations. Zimcosky agreed to act as her advisor in return for payment of various fees including annual fixed fees for monitoring the account portfolio and for advice. Desmond signed an Investment Advisory and Supervisory Services Contract which provided the following:

> We [Tezco] are associated with Mutual Service Corporation, a registered broker-dealer, and as such we can execute securities transactions for your account upon your direction to do so.

The contract did not include a mandatory arbitration clause, but specified that Michigan law would apply to disputes.

In the course of this relationship, Zimcosky made the following limited partnership investments for Desmond:

| Date [4] | Amount | Investment |
|---|---|---|
| 5/8/85 | $10,000 | Granada 3 |
| 7/1/85 | $10,000 | Hall Institutional Mortgage Fund |
| 7/1/85 | $ 5,000 | American Insured Mortgage Investors |
| 7/1/85 | $ 7,500 | McNeil Real Estate Fund XV, Ltd. |
| 10/20/85 | $60,000 | Hall Crowntree Associates |

Apparently, these investments were not successful.[5]

In July 1992, Zimcosky transferred his securities license from MSC to Vestax, another licensed broker-dealer. In doing so, Zimcosky became a registered representative of Vestax, with which he currently is affiliated.

In March 1993, Zimcosky and Desmond's relationship concluded. On that date, Zimcosky wrote to Desmond expressing his regret for her losses, explaining that:

> I believe we were blind-sided by a Government tax law change, the S & L scandal and crisis, and events out of our control which led to the real estate depression not seen since the 1930's. I tried my best to do what was in your best interest. I put in $17,000 of my own money to keep it going when your cash flow was tight and Hall required additional capital.

### B.

On May 2, 1994, Desmond filed a statement of claims in arbitration before NASD against Vestax, MSC, Tezco, and Zimcosky (collectively, Respondents). Among other things, Desmond alleged that "until severance of the relationship in 1993," Respondents placed her in high risk, non-liquid, unsuitable investments and engaged in fraudulent concealment. Specifically in regard to fraudulent concealment, Desmond alleged that the respondents "made inadequate or misleading disclosures concerning the status, value and suitability of [the] investments" which were, "in part, designed to conceal Respondents' previous misconduct." Also, she alleged that Respondents "took undisclosed and actively concealed fees and commissions for recommending and selling [Desmond] certain products in her portfolio."

---

**3.** Before she was married, Desmond was a nun, and had no responsibility for managing her finances. After she was married, her husband managed all of her financial affairs.

**4.** Desmond has stipulated to these dates for purposes of this motion only, but maintains that they have not yet been established.

**5.** It is not clear exactly what happened with the investments. However, the statement of claims alleges $90,000 as an out-of-pocket loss.

Zimcosky, Tezco and MSC retained Eric Richards of the law firm Warner, Norcross & Judd to represent them in the arbitration proceedings. Richards had represented NASD as local counsel in two prior matters, one of which concluded on March 10, 1994, and the other of which concluded on November 13, 1993. These prior representations were not disclosed to Desmond.

In the arbitration, Richards filed a motion to dismiss before NASD on behalf of Zimcosky, Tezco and MSC on the ground that Desmond's claims were untimely, and therefore should be barred under the six-year eligibility period set forth in § 15 of the NASD Code of Arbitration and Procedure (NASD Code),[6] which states:

> Sec. 15. *No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy.* This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

On September 8, 1994, Deborah Massucci, NASD Director of Arbitration, issued a letter ruling on the motion to dismiss, stating:

> 1. Claimant's date of filing pursuant to Section 25(c)(1) of the Code was on May 2, 1994. The 6 year period immediately preceding filing began on May 2, 1988. The Motion to Dismiss is denied in full regarding all purchases made on or after May 2, 1988 and claims regarding those purchases will be considered by the panel of arbitrators.
> 2. Claims regarding purchases made prior to May 2, 1988 will be permitted to go to the panel of arbitrators but only as to the allegations of wrongdoing made on or after May 2, 1988. All allegations of wrongdoing prior to May 2, 1988 are not eligible.[7]

Vestax then sought a declaratory judgment from this Court that purchases made on Desmond's behalf more than six years prior to the filing of the statement of claims with NASD were not eligible for submission to arbitration pursuant to § 15 and that Vestax was under no legal obligation to continue to defend itself or to otherwise participate in arbitration proceedings concerning such claims. Vestax also sought a preliminary injunction enjoining Desmond from taking any further action to arbitrate or initiate a civil action against Vestax based upon her present claims. Desmond responded that her claims were not time-barred because she had alleged fraudulent concealment—an act which customarily tolls the statute of limitations.

At a hearing on the motion for preliminary injunction, the Court expressed reluctance to become involved in what appeared to be Vestax's attempt to flee from the arbitration forum that, along with the rest of the securities industry, it selected for resolution of disputes. The Court also expressed a concern that Desmond's statement of claims was not very clear because it did not specify which counts applied to which defendants and at which time, especially concerning the claim of fraudulent concealment. The Court told Vestax that this was a matter that should be raised in arbitration. Once the statement of claims was clarified, the Court was confident that the issue would become exactly what misconduct by Vestax occurred, if any, and whether it occurred both outside the statute of limitations period and while Zimcosky was licensed by Vestax. For example, because Zimcosky did not begin his employment with Vestax until July 1992, the Court said that Vestax could argue that it was not responsible for any wrongdoing that occurred prior to July 1992, and that it did not engage in wrongdoing from July 1992 to March 1993. The Court indicated that it would not enjoin Desmond's claims in arbitration because it was possible that Vestax engaged in misconduct which might have involved aiding and abetting Zimcosky in acts of fraudulent concealment while Zimcosky

---

6. When she filed the statement of claims, Desmond signed a Uniform Submission Agreement under which she agreed to submit her claims to arbitration in accordance with the NASD Code.

7. The letter ruling said nothing about the allegation of fraudulent concealment.

was licensed by Vestax. On November 3, 1994, the Court entered an order denying Vestax's motion for preliminary injunction without prejudice and granting Desmond's motion for leave to amend to file a third-party complaint seeking a declaration that NASD was bound to follow any eligibility determinations made by the Court.

The next day, Desmond filed a third-party complaint for declaratory relief "against the NASD that the ruling of this Court will determine the eligibility of Desmond's claims before the NASD." NASD asked Richards to represent it in the matter of Desmond's third-party complaint. Richards explained that he would not be able to represent NASD because he was already representing parties in the underlying arbitration. NASD contacted Desmond's counsel to explain that it needed extra time to respond to the third-party complaint because Richards, NASD's "regular attorney in Michigan," was conflicted out of the case.

Desmond then filed an amended third-party complaint which included an additional claim for declaratory relief and a claim for damages based on NASD's failure to advise her of its relationship with Richards. The amended third-party complaint seeks: (1) a declaratory judgment against NASD setting aside the letter ruling of the Director of Arbitration; (2) compensatory damages against NASD on the ground that NASD has engaged in "misconduct," and; (3) certification of the matter as a class action and an

award of monetary and equitable relief "to correct adverse consequences resulting from NASD's misconduct," alleging that it is NASD's general policy not to disclose prior attorney-client relationships with the parties appearing before it.[8]

On January 9, 1995, "upon review of the documents filed in the [ ] arbitration, including the action filed in federal court," NASD administratively stayed the arbitration pending resolution of the eligibility issue.

### III. *Fraudulent Concealment*

 "The questions of whether certain parties are contractually bound to arbitrate and what issues may be arbitrated are for the courts to decide." *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991); *Roney and Company v. Kassab*, 981 F.2d 894, 898 (6th Cir.1992). In making this determination, a court must operate under a "presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)) (emphasis added).[9]

---

8. On February 28, 1995, Desmond filed a second amended third-party complaint containing substantially the same allegations as the amended third-party complaint.

9. In *AT & T Technologies*, the Supreme Court reaffirmed that the question of arbitrability is usually an issue to be decided by the courts, "[u]nless the parties clearly and unmistakably provide otherwise[.]" 475 U.S. at 648, 106 S.Ct. at 1418. In *First Options of Chicago, Inc. v. Manuel Kaplan*, — U.S. —, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the Supreme Court held that the standard of review to be applied by a court to an arbitrator's decision about arbitrability depends upon the agreement between the parties. If the parties agreed to submit the arbitrability question itself to arbitration, "the court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *Id.* at —, 115 S.Ct. at 1923, 131 L.Ed.2d at 993. If, on the other hand,

the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question "independently." *Id.* "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* at —, 115 S.Ct. at 1924, 131 L.Ed.2d at 994. (citing *AT & T Technologies, supra* 475 U.S. at 649, 106 S.Ct. at 1418).

In *Dean Witter Reynolds, Inc. v. McCoy*, 995 F.2d 649 (6th Cir.1993), the Sixth Circuit relied upon the *AT & T Technologies* standard in holding that "in the context of NASD Rule 15, 'the court must first determine from the contract provisions dealing with arbitration, the particular grievances that are intended to be subject to arbitration' " and that "the District Court must make that determination before arbitration may commence." *Id.* at 651 (citing *Roney, supra* at 898). Thus, the Sixth Circuit has held that questions involving § 15 of the NASD Code should be heard by the courts.

The parties do not contest that a valid agreement to arbitrate exists between them. Rather, the main issues before the Court are: (1) whether the six year time period in § 15 operates as a statute of limitations subject to tolling where there is a claim of fraudulent concealment or whether it is a statute of repose which is an absolute bar to arbitration of stale claims; (2) what is necessary to state a claim in arbitration of fraudulent concealment sufficient to toll § 15, and; (3) whether Desmond has sufficiently stated such a claim against Vestax.

### A.

■ The factors to be considered and carefully balanced when deciding whether to issue a preliminary injunction are:

1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

2. Whether the movant has shown irreparable injury.

3. Whether the preliminary injunction could harm third parties.

4. Whether the public interest would be served by issuing the preliminary injunction.

*Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985). These are factors to be balanced rather than prerequisites. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985).

*First Options of Chicago* does not appear to affect *McCoy* because both cases rely on *AT & T Technologies* as the proper standard for determining whether parties have agreed to submit questions of arbitrability to the courts or to the arbitrators. Therefore, unless and until the Sixth Circuit finds that it needs to reexamine its position in *McCoy* in light of *First Options of Chicago, McCoy* is binding on this Court.

Interestingly, the Third Circuit has held that § 35 of the NASD Code shows a "clear and unmistakable" expression of the parties' intent to have arbitrators, and not the court, determine which disputes the parties have agreed to submit to arbitration. *FSC Securities Corp. v. Freel*, 14 F.3d 1310, 1312 (8th Cir.1994); *cf. Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509, 514 n. 6 (7th Cir.1992) (court did not "believe that [§ 35]

### 1.

#### a.

In determining Vestax's probability of success, the first question is whether, where a claim of fraudulent concealment is stated, the "occurrence or event" which starts the running of the period of eligibility is the date of purchase of the investment or the date the investor realizes, or reasonably should have realized, she has suffered some form of injury. Desmond contends that she did not discover the fraud until sometime in 1993. Under Michigan law:

> If the existence of a cause of action is concealed by the party who would be liable, the person entitled to sue may bring the action within two years after the date of discovery or after the date the existence of the cause should have been discovered, despite any applicable statute of limitations.

*Lumber Village, Inc. v. Siegler*, 135 Mich. App. 685, 355 N.W.2d 654 (1984); citing M.S.A. 27A.5855. The NASD Code of Arbitration Procedure makes no mention of a tolling provision based on fraudulent concealment.

The Sixth Circuit's only discussion of this issue appears in *Roney, supra*, and *Dean Witter Reynolds, Inc. v. McCoy, supra* n. 9 (*McCoy 1*). In *Roney*, the Sixth Circuit concluded that the six year period in Rule 603 of the New York Stock Exchange (NYSE)[10] was a substantive bar to arbitrating actions before the NYSE because it operated as an eligibility requirement. 981 F.2d

is a clear and unmistakable expression of the parties' intent to have arbitrators decide which disputes are arbitrable"). Section 35 reads:

> The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code which interpretation shall be final and binding upon the parties.

10. Rule 603 of the NYSE reads:

> No dispute, claim or controversy shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

at 899. The Sixth Circuit held that since the appellees had "presented no compelling reason to deviate from the clear language of Rule 603," they were enjoined from arbitrating their claim based on occurrences over six years in the past. *Id.* The appellees argued, however, that their claims were not subject to the Rule 603 eligibility requirement because they alleged fraudulent concealment. The Sixth Circuit rejected this argument because it did not find a sufficient allegation of fraudulent concealment. *Id.* at 900. Therefore, it never reached the issue of whether a sufficient allegation of fraudulent concealment would have acted as an exception to Rule 603's eligibility requirement.

In *McCoy 1, supra,* several aggrieved investors brought a claim before NASD alleging that Dean Witter Reynolds, Inc. (Dean Witter) mismanaged their funds and falsely assured them that their money was safe while it did so. Dean Witter filed an action in district court for a preliminary injunction against the arbitration, arguing that the investors were time-barred under § 15 from bringing the action. The district court, prior to the decision in *Roney,* denied the motion on the basis that this was a question for the arbitrator.

The Sixth Circuit reversed and remanded on the basis that *Roney* decided that the question of which issues "are eligible" for arbitration is a question for the courts. 995 F.2d at 650–51; *see* discussion, *supra* n. 9. The Sixth Circuit then went on to discuss the merits of Dean Witter's motion for preliminary injunction. The Sixth Circuit said that, in *Roney,* it had agreed with Dean Witter's contention that the word "eligible" must be given its plain meaning and interpreted as absolutely barring stale disputes from reaching arbitration. Although its decision in *Roney* was based upon NYSE Rule 603, the Sixth Circuit noted that this rule was similar in substance and function to NASD Code § 15. Based on this reason, the Sixth Circuit found that "not only is it likely that Dean Witter will succeed on the merits of its argument that the question of arbitrability under NASD section 15 is not arbitrable, under *Roney,* its success is certain." *Id.* at 651. The Sixth Circuit concluded that this alone

warranted injunctive relief without any need to consider the other preliminary injunction factors. However, the Sixth Circuit went on to stress that it was not reaching the question of whether § 15 actually did bar the investors' claims against Dean Witter, but was remanding this question to the district court.

The most significant portion of the Sixth Circuit's decision in *McCoy 1* is the following statement with which it concluded its inquiry:

> *Section 15 is not akin to a statute of repose;* should the District Court find, applying the relevant State law, that Dean Witter or its agents succeeded in fraudulently concealing their alleged wrong, *then the claims potentially may still be pursued in arbitration. See Roney,* 981 F.2d at 900.

*Id.* This statement has since been interpreted in the Eastern District of Tennessee, which heard *McCoy 1* on remand, and in this district, which decided a case with virtually identical facts, to mean two different things.

On remand, the District Court for the Eastern District of Tennessee ignored the Sixth Circuit's concluding language in *McCoy 1,* categorizing it as mere *dicta,* because it states that the "claims *potentially* may still be pursued in arbitration" if fraudulent concealment is found. *Dean Witter Reynolds, Inc. v. McCoy,* 853 F.Supp. 1023 (E.D.Tenn. 1994), *(McCoy 2* ). It determined that this language did not establish a fraudulent concealment exception because it cited to *Roney.* *Id.* at 1029. The District Court did not read *Roney* as holding that the six-year time limit in § 15 could be equitably tolled by fraudulent concealment, but instead found that *Roney* never met this issue because the Sixth Circuit there determined that there was no fraudulent concealment claim presented. The District Court decided that the issue was an open one in the Sixth Circuit and held that fraudulent concealment does not toll the six year eligibility provision in § 15, even in cases of fraudulent concealment. *Id.* at 1030. In doing so, it relied upon the Sixth Circuit's decision in *Roney* based upon NYSE Rule 603, and the fact that two other circuits, the Third and the Seventh, had held that NYSE Rule 603 was not a procedural statute of

limitation but rather a substantive limitation on the arbitrator's jurisdiction. *Id.*

■ In *Davis v. Keyes*, 859 F.Supp. 290 (E.D.Mich.1994), Judge John Feikens of this district disagreed with the District Court for the Eastern District of Tennessee's interpretation of the Sixth Circuit's language in *McCoy 1*, finding that the language in *McCoy 1* was a "clear instruction" rather than mere *dicta.* Judge Feikens held that § 15:

> operates as a statute of repose, except in cases where the claim involves fraudulent concealment. In cases where there has been fraudulent concealment, the six-year eligibility requirement operates as a statute of limitations subject to tolling.

*Id.* at 291. However, since Judge Feikens found that a sufficient claim for fraudulent concealment was not made by the defendant, he held that no circumstances warranted tolling of the period and the defendant's claims which were more than six years old were ineligible for arbitration. *Id.*

Judge Feikens reasoned that the Sixth Circuit was in accordance with the decisions by the Seventh and Eighth Circuits involving claims other than fraudulent concealment. *Id.* at 292. However, where the claim involves fraudulent concealment, based upon the holding in *Roney* and the concluding language in *McCoy 1*, Judge Feikens concluded that the Sixth Circuit's position was that the eligibility period is tolled if there is sufficient proof of fraudulent concealment. *Id.* Judge Feikens said:

> Explicit in the court of appeals rulings and findings in *Roney* and *McCoy [1]* is the conclusion that the six-year eligibility period operates as a statute of repose. Implicit in the ruling is the conclusion that fraudulent concealment is a condition which tolls the six-year eligibility period. The instruction provided to the district court by the court of appeals in *McCoy* is both explicit and unambiguous. If there is adequate proof of fraudulent concealment, de-

fendants' claims more than six years old may still be pursued in arbitration.

*Id.* at 293.

The issue before this Court is whether to agree with the Eastern District of Tennessee's interpretation in *McCoy 2* or Judge Feikens' interpretation in *Davis*, or to make its own interpretation. This Court agrees with Judge Feikens' interpretation in *Davis*.

The decision in *Davis* is a fair reading of the Sixth Circuit's decisions in *McCoy 1* and *Roney.* The Sixth Circuit in *Roney* never reached the question of whether fraudulent concealment could act as an exception to the six year period in § 15 because it was not presented with a sufficient claim of fraudulent concealment. Then, in *McCoy 1*, the Sixth Circuit referred back to the discussion in *Roney*, and told the district court that on remand, if it found that the plaintiff engaged in fraudulent concealment, "then the claims potentially may still be pursued in arbitration." This is an instruction to the lower court, not *dicta.* It means that the Sixth Circuit was ready to hold that fraudulent concealment can operate as an exception to the six-year period in § 15 despite that the NASD Code of Arbitration Procedure makes no mention of this form of tolling.[11]

Reading these two decisions together, it is clear that if Desmond has sufficiently alleged a claim for fraudulent concealment, the six-year period in § 15 will not bar her from arbitrating her claims.

b.

Choosing which law to apply to determine whether Desmond's claim for fraudulent concealment is sufficient to toll § 15 is difficult. In *Board of Regents v. Tomanio*, 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1979), the Supreme Court held that in 42 U.S.C. § 1983 cases, where Congress did not establish a statute of limitations or a body of tolling rules for § 1983, "the federal courts were obligated not only to apply the analogous [state] statute of limitations ... but also to apply the [state] rule for tolling that statute of limitations." *Id.* Following the ratio-

---

11. The circuits are not at all in agreement on this issue. The Third, Seventh, and Eighth Circuits apply § 15 as a substantive bar.

nale of *Tomanio*, it seems logical to apply the tolling rules of the forum from which the statute of limitations has been borrowed. Here, that would be NASD. However, the NASD "Code of Arbitration Procedure" makes no mention of a fraudulent concealment tolling provision.[12] The Court is therefore placed in the awkward position of having to apply the tolling law of a forum different than the forum from which it borrowed the statute of limitations.

■ Sixth Circuit precedent provides little guidance in making this choice. *Roney, supra,* and *McCoy, supra,* are the only cases which even discuss the issue of which law should be applied to determine the sufficiency of a claim of fraudulent concealment for purposes of tolling NASD Code § 15. The issue was addressed in a tangential fashion in both cases, and in each the Sixth Circuit's decision was different. In *Roney, supra* at 900, the Sixth Circuit relied on "the federal doctrine of equitable tolling."[13] This doctrine looks to the sufficiency of the allegations in the statement of claims rather than substantively evaluating the merits of the claim. *See Davenport* at 1142 (statute not tolled where plaintiff "fail[ed] to *allege* either 'due diligence' or 'active concealment....' "). Under the doctrine, "the statute of limitations is tolled if the fraud remained undisclosed because the defendant took additional affirmative steps after committing the fraud to keep it concealed." *Id.* at 1142. A fiduciary's mere silence is insufficient. *Id., citing Teamsters Local 282 Pension Trust Fund v. Angelos,* 815 F.2d 452, 456 n. 4 (7th Cir.1987).

Later, in *McCoy*, the Sixth Circuit did not follow this approach. It implied that a court should look to "the relevant state law" to determine whether the statute of limitations in § 15 should be tolled. *McCoy, supra* at 651 ("... should the District Court find, *applying the relevant state law*, that Dean Witter or its agents succeeded in fraudulently concealing their alleged wrongs, then the claims potentially may still be pursued in arbitration") (emphasis added). The Sixth Circuit did not define "the relevant state law."

i.

It is the Court's position that in the absence of an NASD tolling provision, in keeping with the spirit of *Tomaio* the arbitrators should have the maximum possible discretion to decide whether a claim of fraudulent concealment is tenable. Neither the federal equitable tolling rules nor the "relevant state" tolling rules accomplish this result very well because the arbitrators are not given an opportunity to evaluate the merits of a claim which cannot successfully pass the tests of these other tribunals. Rather, to best achieve this result, a conclusory claim of fraudulent concealment which is less than sufficient under the federal rules or the "appropriate state law" should be eligible for arbitration. Discretion as to the merits of such claims will then lie more completely with the arbitrators.

A short review of the recent history of securities litigation sheds light on the Court's position. In the late 1980's, the securities industry decided that it was in its best interest to have disputes against it resolved in an

---

12. Section 18 reads:
 **Sec. 18.** (a) Where permitted by applicable law, the time limitations which would otherwise run or accrue for the institution of legal proceedings shall be tolled where a duly executed Submission Agreement is filed by the Claimant(s). The tolling shall continue for such period as the Association shall retain jurisdiction upon the matter submitted.
 (b) The six (6) year time limitation upon submission to arbitration shall not apply when the parties have submitted the dispute, claim, or controversy to a court of competent jurisdiction. The six (6) year time limitation shall not run for such period as the court shall retain jurisdiction upon the matter submitted.

13. The Sixth Circuit did not use this terminology, but cited *Davenport v. A.C. Davenport & Son Co.,* 903 F.2d 1139, 1141–42 (7th Cir.1990), in which the Seventh Circuit applied both "the federal doctrine of equitable tolling" and the tolling laws of the state from which the statute of limitations was borrowed. In *Davenport*, the Seventh Circuit declined to decide which body of law applied, or if both could be applied, because the outcome of the case was the same either way. The Seventh Circuit explained that several times in the past it had held that federal common law determined the circumstances which would equitably toll a borrowed limitations period and that it was not sure of *Tomaio*'s impact, if any, on these prior decisions.

arbitration forum.[14] Arbitration forum selection clauses became standard in client contracts and, initially, the courts were shut out of the entire process. However, brokerage houses soon became dissatisfied with certain facets of the arbitration process. On these occasions, the brokerage houses turned to the courts for declaratory and injunctive relief so that a higher authority could tell the arbitrators that they had done something wrong and that they should henceforth proceed in a particular manner.

At present, these cries for court interference in the arbitration process are relatively common; so much so that cases submitted to arbitration often result in satellite litigation in the court system. *See* Stanley Keller, *Insights*, Vol 8, Number 5, May 1994 at 2 ("arbitration is becoming the litigation battlefield that it was intended to avoid"). Not surprisingly, many questions have begun to arise concerning the appropriate role of a court in the arbitration process. In answer to one of these questions, it is generally held that courts have the power to decide what claims are "eligible" for arbitration.[15] However, the scope of "eligibility" has not been clearly defined. The question is: how much of this solicited assistance should the courts provide if the arbitration process is to continue to function?

The Court's position on this issue is clear from the comments it made from the bench at the first hearing. Simply stated, the Court is a facilitator to a forum chosen by the securities industry and accepted by its clients who buy the industry's services, and in that role, the Court should refrain from superimposing its rules on the forum. The need for such an approach is especially strong in the present situation where the Court is "borrowing" the arbitration forum's

statute of limitations and must apply a tolling rule that is not included in the arbitration forum's rules.

This position finds support in Supreme Court precedent. In *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), a case concerning the Labor Management Relations Act, 29 U.S.C. § 151, *et seq.,* the Supreme Court stated:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is then confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

> \* \* \* \* \* \*

> The courts therefore have no business weighing the merits of the grievance, considering whether there is equity in a particular claim or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those the court will deem meritorious. The processing of even frivolous claims may have therapeutic values which those who are not a part of the plant environment may be quite unaware.

*Id.* at 567–68, 80 S.Ct. at 1346–47; *see generally,* Frank Elkouri and Edna Asper Elkouri,

---

**14.** The Court expressed concern over this decision in a personal letter to the Editor of the New York Times:

To the Editor,

When the Supreme Court gave stockbrokers the power to insist that aggrieved customers submit their disputes to arbitration, it accorded them something given to no other American industry. ("When Naivete Meets Wall Street," Dec. 3) No other industry is privileged with a dispute resolution system in which the adjudicator is not required to explain the basis of the decision and no mechanism is available for

review and correction of mistakes. Judges surely would do a faster job of deciding cases if no explanation was required of the basis for decision and there was no concern over review by a higher court. That Congress has done nothing to correct this gross imbalance is certainly evidence of the continued value we place on property in contrast to persons.

The N.Y. Times, Business Section, Sunday, January 14, 1990, at 13.

**15.** *See discussion, supra* n. 9.

*How Arbitration Works,* 3d ed. at 170–173 (1973).

■ Here, Desmond has alleged that Vestax "made inadequate or misleading disclosures concerning the status, value and suitability of the investments" which were "designed to conceal Respondents' previous misconduct." This should be a sufficient allegation to toll § 15 and to require arbitration of the claim of fraudulent concealment. If Desmond's claim of fraudulent concealment is factually deficient, it will ultimately be dismissed in arbitration.

ii.

■ Desmond's statement of claims is also sufficient to meet the two bodies of law arguably used by the Sixth Circuit—"the relevant state law" and the federal equitable tolling doctrine. Although what is meant by the "relevant state law" is not clear, here the only possible "relevant state" is Michigan. Arbitration is a matter of contract law, *First Options of Chicago, supra* n. 8, and the Investment Advisory and Supervisory Services Contract between Desmond and MSC states that "[t]his contract will be governed by, and interpreted according to the laws of the State of Michigan." Further, Michigan is the forum state because NASD selected Michigan as the hearing location. *See generally, Merrill Lynch, Pierce, Fenner & Smith v. Lauer,* 49 F.3d 323, 330–31 (7th Cir.1995) (where arbitration agreement forum selection clause offered claimant a selection of arbitrators who would then select arbitration sight, claimant filed claim before NASD and NASD chose a Florida hearing location, district court in Illinois properly refused to entertain prearbitration dispute or to compel arbitration in Illinois).

■ Under Michigan law, "[a]s a general rule, for fraudulent concealment to postpone the running of the period of limitation, the fraud must be manifested by an affirmative act or misrepresentation." *Lumber Village, supra* 135 Mich.App. at 694, 355 N.W.2d 654. There is an exception to this requirement where the parties are in a fiduciary relationship because a fiduciary has an affirmative duty to disclose material facts. *Id.* at 695, 355 N.W.2d 654. It is under this exception

that Desmond bases her claim of fraudulent concealment.

■ Desmond concedes that her account was technically a discretionary account, but argues that the account became a hybrid-type account which imposed a fiduciary duty on Zimcosky. The relationship between a broker and his or her customer varies between discretionary, non-discretionary and in between. *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 461 F.Supp. 951 (E.D.Mich.1978). Which relationship exists determines whether the broker acts as a fiduciary. In *Leib, supra,* Judge Feikens discussed the relationship between a customer and his broker. In a non-discretionary account, the customer, rather than the broker, determines which purchases and sales to make and no fiduciary relationship arises. *Id.* at 952. In a discretionary account, the broker does not need customer authorization before making a transaction, and has a fiduciary relationship with the customer. *Id.* at 953. Between the discretionary and non-discretionary accounts is a hybrid-type account in which "the broker has in fact usurped actual control over a technically non-discretionary account." *Id.* at 954. Where this occurs, "the broker owes his customer the same fiduciary duties as he would have had the account been discretionary from the moment of its creation." *Id.* In determining whether a broker has assumed control of a non-discretionary account:

(1) the courts examine the age, education and intelligence and investment experience of the customer;

(2) if the broker was socially or personally involved with the customer, the courts are likely to conclude that the customer relinquished control because of the relationship of trust and confidence;

(3) if many of the transactions occurred without the customer's prior approval, the courts will often interpret this as a serious usurpation of control by the broker; and

(4) if the broker and the customer speak frequently with each other regarding the status of the account or the prudence of a particular transaction, the courts will usually find that the customer, by maintaining

such an active interest in the account, thereby maintained control over it.

*Id.*

In *Davis, supra,* Judge Feikens determined that the customers maintained a non-discretionary account with the broker because the customers made the purchase and sale decisions even though they did so based on the broker's advice. The customers contended that a fiduciary relationship nevertheless existed because they presented their credentials to the broker and they had no investment experience in the investments which were eventually made. Judge Feikens did not accept this argument because, although the customers were retirees, they had not alleged that they were taken advantage of due to their age or were of limited intelligence. 859 F.Supp. at 295. Also, prior to entering into a relationship with the broker, the customers owned a number of investments, albeit different investments from those purchased from the broker. *Id.* at 295; *See Leib, supra* at 956 (broker had not usurped control of non-discretionary account where customer had professional experience in managing the financial affairs of others and understood the dynamics of the stock market).

■ The first factor in *Leib* for determining whether a broker has usurped control over a non-discretionary account is the customer's age, education, and investment experience. Desmond's age and intelligence do not suggest that she was at a disadvantage. However, she had no experience with financial matters at all when she went to Zimcosky for advice unlike in *Davis* where the plaintiffs had previously owned a number of investments. Based upon *Leib* and *Davis,* it appears that experience is a heavily weighted factor because, in both of those cases, the court refused to find a fiduciary relationship where the customers had investment experience. Therefore, the first factor weighs in Desmond's favor.

Factors two and four which deal with a personal relationship between the broker and the customer and active interest by the customer in the account do not appear to apply. The third factor in *Leib* looks to whether the transactions occurred without the customer's prior approval. There is no evidence as to whether Zimcosky made the purchase and sale decisions with or without Desmond's approval.

Given that the only applicable factor is the first factor and that it points to a fiduciary relationship, the Court is satisfied that a fiduciary relationship existed between Desmond and Zimcosky despite the technically discretionary nature of the account. Under Michigan law, this fiduciary relationship is sufficient to state a claim of fraudulent concealment sufficient to toll § 15 even absent an affirmative act.

■ A fiduciary relationship would not be sufficient to toll § 15 under the federal equitable tolling doctrine absent an allegation of affirmative conduct. The "silence of a fiduciary" is not enough under this doctrine. However, Desmond has alleged that Vestax "made inadequate *or misleading disclosures* concerning the status, value and suitability of the investments" which were "designed to conceal Respondents' previous misconduct." (emphasis added). Therefore, unlike the claimant in *Davenport, supra,* Desmond has alleged more than a mere "failure to disclose."

c.

Thus, the Sixth Circuit allows tolling of the six year period in § 15 for claims of fraudulent concealment and, under either the Court's position or either of the positions arguably taken by the Sixth Circuit, Desmond has made a claim of fraudulent concealment against Vestax sufficient to toll § 15.[16] Vestax's case therefore has a low probability of success on the merits.

---

**16.** Where a claimant has signed a mandatory arbitration agreement at the inception of the investment advisory relationship, the majority of cases suggest that a claim that is stale pursuant to § 15 cannot be litigated in court. *See Castellano v. Prudential–Bache Secs., Inc.,* 1990 WL

87575, 1990 U.S.Dist. LEXIS 7352 (S.D.N.Y. June 19, 1990), *Calabria v. Merrill Lynch, Pierce, Fenner & Smith,* 855 F.Supp. 172 (N.D.Tex. 1994), *Merrill Lynch v. Shelapinsky,* 1994 WL 397123, 1994 U.S.Dist. LEXIS 10477 (W.D.Pa. Mar. 16, 1994), *Piccolo v. Faragalli,* 1993 WL

2.

In *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 515 (3rd Cir.1990), the Third Circuit stated the following in regard to irreparable harm in arbitration disputes:

[w]e think it obvious that the harm to a party would be *per se irreparable* if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority. Even if such things could be known in advance, it would be irrelevant whether the arbitrator's determination would be the same as the court's. A reluctant party has a right to a judicial determination of his obligation to arbitrate.

*Id.* at 515. Thus, the harm to Vestax would be "per se irreparable" were the Court not to grant the preliminary injunction if warranted.

The third and fourth factors are harm to third parties and service to public interest. Desmond argues that parties with claims that have been fraudulently concealed will be harmed by the grant of a preliminary injunction because of the precedent this will set. However, judicial precedent, correctly formulated, does not harm anyone. The public interest here is in the proper interpretation of arbitration agreements. This favors neither party over the other.

B.

Balancing these factors, it appears that Vestax should not be granted a preliminary injunction preventing Desmond from arbitrating claims based upon purchases

331933, 1993 U.S.Dist. LEXIS 13111 (E.D.Pa. Aug. 24, 1993); *cf. Prudential v. LaPlant*, 829 F.Supp. 1239 (D.Kan.1993) (inference can be drawn from opinion that § 15 barred claims can be litigated in court), *Smith Barney v. St. Pierre*, 1994 WL 11600, 1993 U.S.Dist. LEXIS 18649 (N.D.Ill. Jan. 4, 1994) (§ 15 barred claim can be litigated in court). However, the pivotal factor in these cases was that the claimant signed an agreement to arbitrate all claims against the broker at the inception of the investment advisory relationship. There are no cases addressing this question in the context of a claimant like Desmond who did not enter into such an agreement. Given this, it is reasonable to conclude that Des-

made prior to May 2, 1988. Given that a fiduciary relationship existed between Desmond and Zimcosky, and given that Zimcosky was employed and licensed by Vestax, Desmond has sufficiently stated a claim of fraudulent concealment to toll the § 15 statute of limitations. She alleges that the respondents "made inadequate or misleading disclosures concerning the status, value and suitability of the investments" which were, in part, "designed to conceal Respondents' previous misconduct." She also alleges that "some misconduct occurred" after the 1985 purchases and that Zimcosky was employed by Vestax during a period of time in which he rendered services to Desmond and presumably, during which "some misconduct occurred." Presumably, the conduct to which Desmond is referring is the lack of adequate disclosures concerning the status and suitability of her investments and the concealment of the award of commissions. The date Desmond realized, or should have realized she suffered some form of injury becomes the relevant date.[17]

This decision is consistent with the Court's discussion from the bench on November 3, 1994. The Court has gone further, however, in deciding that Desmond has made a claim of fraudulent concealment sufficient to toll § 15 and that the claim is therefore arbitrable, rather than leaving this decision for the arbitrators.[18] The arbitrators are now the finders of fact on the merits of the issue.

IV. *Third–Party Complaint*

The Court will now turn to the motions concerning Desmond's third party complaint: NASD's motion to dismiss Desmond's third party complaint and MSC's motion to inter-

mond would still have the option of litigating in court any claims failing to meet the statute of limitations in § 15.

17. The Court reiterates that a clarification of the statement of claims would assist all involved parties.

18. The Amended Order of November 3, 1994, denying Vestax's motion for preliminary injunction remains in effect. This opinion clarifies the portion of the Amended Order stating that Vestax's motion is denied "for the reasons stated on the record."

vene and to dismiss Desmond's third party complaint.

### A.

■ NASD contends that there is no reason for the Court to entertain a declaratory judgment action as to its duty to comply with the Court's order on eligibility. NASD contends that Desmond has not asserted a basis in the complaint to support a claim that NASD will not abide by the Court's ruling. In fact, NASD argues that by administratively staying the arbitration for ninety days, it has indicated its willingness to defer to the Court.

The Court agrees. The Court previously denied Vestax's request to enjoin Desmond from arbitrating her claims and NASD has indicated by its voluntary stay that it will abide by the Court's eligibility decisions. Therefore, the Court will dismiss Desmond's claim seeking a declaratory judgment that NASD is required to abide by the Court's eligibility decisions.

### B.

NASD and MSC contend that the Court is without subject matter jurisdiction to entertain Desmond's third party claim regarding NASD's misconduct. Desmond argues that NASD failed to disclose its relationship with Richards and that it did so as a matter of policy. She argues that even though Richards may not have had an open file with NASD at the time the statement of claims was filed, there was nevertheless an ongoing attorney-client relationship between Richards and NASD at the time the statement of claims was filed which presents a potential for bias that should have been revealed. Desmond argues that this bias is what led Richards to file the § 15 motion to dismiss with the Director of Arbitration rather than the arbitration panel as is done in the normal course. Desmond wants the Director of Arbitration's letter ruling vacated and compensation for costs and attorney fees.

■ The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, gives a federal court jurisdiction to vacate an arbitration award upon application of a party to the arbitration in a situation "where there was evident partiality or corruption in the arbitrators, or either of them" or where the arbitrators were guilty of "any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(2) and (3). A district court does not have jurisdiction over disputes involving allegations of bias until after the arbitration proceedings have come to a close and the party claiming bias has received an award. *See In Matter of Michaels and Mariforum Shipping, S.A.,* 624 F.2d 411, 414 n. 4 (2d Cir.1980) ("It is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award"), *Marc Rich & Co. v. Transmarine Seaways Corp.,* 443 F.Supp. 386, 386–87 (S.D.N.Y.1978) ("the question of qualification, where initially committed to the arbitrators themselves, is subject to judicial review only after an award has been made"), *Corporate Printing Co. v. N.Y. Typographical Union,* 601 F.Supp. 323, 328 (S.D.N.Y.1984) (court refused to consider allegation of institutional bias where arbitrator had been selected but had not yet made an award). One court made an exception to this general rule where, prior to the commencement of any arbitration proceedings, the plaintiff alleged specific instances of actual misconduct on the part of an arbitrator. *See Metropolitan Property & Cas. v. J.C. Penney Cas.,* 780 F.Supp. 885 (D.Conn.1991) (court distinguished *Michaels, supra,* because unlike *Michaels,* the "[plaintiff] raises no interlocutory appeal arising out of the arbitration proceedings but seeks to disqualify an arbitrator for misconduct prior to the beginning of that process," and distinguished *Corporate Printing, supra,* and *Marc Rich, supra,* because "those cases involved disputes over the 'qualifications' and 'institutional bias' of arbitrators that created 'at least the appearance of bias' "). In other words, there may be an exception for (1) non-interlocutory requests for relief which are (2) based on specific instances of actual misconduct.

Here, Desmond seeks interlocutory relief[19] based on an allegation of both institutional bias and misconduct by NASD in failing to disclose its relationship with Richards.[20] Desmond is seeking interlocutory relief which is barred by the general rule preventing vacatur prior to an award. Insofar as she alleges an act of specific misconduct against NASD, Desmond partially meets the exception carved out in *Metropolitan*.[21] To grant Desmond the relief she seeks, however, the Court would have to extend the exception in *Metropolitan* to allow for interlocutory relief.

There are good reasons not to make this extension. First, the arbitration process provides a forum for Desmond's complaint. The Director's letter ruling states that "[p]arties may, in their discretion, reassert these issues with the panel of arbitrators." Therefore, if Desmond is concerned about the integrity of the Director's ruling as to the application of § 15, she may reassert the § 15 issue before the arbitration panel which will be assigned to hear her claims. Desmond may be concerned that NASD's bias will spill into its selection of the arbitration panel. *The Arbitrator's Manual* requires arbitrators to disclose any possible conflicts, however, and Desmond will have an opportunity to assert a challenge for cause against any of the arbitrators assigned to the panel.

Second, the allegation of misconduct against NASD is far less egregious than the allegations which were made in *Metropolitan* and which led the court in that case to make an exception. There, the plaintiffs alleged that one of the arbitrators:

engaged in *ex parte* meetings and discussions with [Party "A" to the arbitration] at its Dallas headquarters concerning the merits of its claims in the arbitration prior to his formal selection to the panel, accepted "hospitality" from [Party "A"] during those meetings, evaluated documentary evidence relevant to the arbitration proceeding prior to his selection as an arbitrator, attempted to discuss the merits of the case with [Party "B's"] appointed arbitrator before the third arbitrator had been selected [by the arbitrators chosen by Party "A" and Party "B"], and failed to reveal his *ex parte* activities to [Party "B"].

780 F.Supp. at 887–88. Here, Desmond is alleging only that NASD failed to advise her of a relationship that had the potential for bias and/or the appearance of bias.

Desmond's claim against NASD is premature. The Court is without jurisdiction to entertain an interlocutory request to vacate a procedural ruling made in the underlying arbitration on the ground of alleged misconduct in failing to disclose a potential bias. An award of associated costs and attorney fees would like-wise be premature.

## V.

The Court will enter an order dismissing the third-party complaint. There is no need to enter an order concerning Vestax's motion because this opinion merely expounded on the Amended Order dated November 3, 1994

---

**19.** Although the arbitrators have not yet been selected, the relief Desmond is seeking is properly categorized as interlocutory because a procedural ruling has already been made in the arbitration.

**20.** Desmond argues that "Defendant's problem is not with the forum—but with the incompetence and lack of integrity of those who are in charge of it as evidenced by their misconduct in this specific case." Desmond seems to be saying that she is not alleging institutional bias. However, in arguing that the individuals in charge of NASD are incompetent and lack integrity, Desmond is expressing her lack of trust in the impartiality of the forum and is essentially alleging institutional bias.

**21.** *See Pompano–Windy City Partners v. Bear, Stearns & Co.*, 698 F.Supp. 504 (S.D.N.Y.1988). In *Pompano*, the plaintiffs asserted institutional bias. The court interpreted this as an argument that:

because the *forum* is asserted to be biased, it will further its bias by the appointment of biased arbitrators, it will ensure arbitrator conformity to its biased views through its payment of the arbitrators, and will further act on its bias by improperly influencing the arbitrators in *ex parte* communications through its staff attorney.

*Id.* at 517. The court held that the plaintiff's claims of bias were "too speculative and attenuated to justify invalidation of all contemplated arbitration, or to enjoin it before it commences." *Id.*

in which the Court denied the motion. The Amended Order remains in effect.